UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 1:06-cv-02086-HHK<br><br>REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR A STAY OF PROCEEDINGS |
| Plaintiff, |  |  |
| v. |  |  |
| MARGARET SPELLINGS, Secretary of Education, *et al.*, |  |  |
| Defendants. |  |  |

## PRELIMINARY STATEMENT

Defendants, the Secretary of Education (Secretary) and the Department of Education (DOED), have moved for an order staying all proceedings in this action through June 29, 2007, so that defendants can produce to plaintiff, Citizens for Responsibility and Ethics in Washington (CREW), what plaintiff says it wants: documents pertaining to an alleged advisory committee, now defunct, that operated formerly under the Reading First program, a program established by the No Child Left Behind Act of 2001 (NCLBA), Pub. L. No. 107-110, 115 Stat. 1425 (2002). Plaintiff asks that defendants' motion be denied because defendants are proposing to produce fewer than all of the documents that they are obligated to produce; because defendants have not provided sufficient "assurances" that they will comply in the future with the Federal Advisory Committee Act (FACA), 5 U.S.C. App. 2, in their administration of the Reading First program; and because defendants have not taken sufficient remedial action to deal with certain deficiencies in the administration of the Reading First program that allegedly have existed in the past. Pl. Opp'n Def. Mot. Stay Proceedings (Pl. Mem.) at 2-3; *see also id.* at 1, 8-10, 11-12.

None of the arguments that plaintiff makes in opposition to defendants' motion for a stay is persuasive. The documents that defendants propose to produce are all of the documents that defendants would be obligated to produce if FACA were held applicable to this case. The alleged need for defendants to provide additional assurances that they will comply with FACA in their administration of the Reading First program in the future is not an issue that is ripe for judicial consideration. The alleged need for defendants to take further remedial action to deal with certain deficiencies in the administration of the Reading First program that allegedly have existed in the past is not an issue that this lawsuit raises or an issue that plaintiff has standing to raise. Defendants' motion for a stay of proceedings should therefore be granted.

### THE STATUTORY SCHEME

A.    NCLBA and the Reading First Program

NCLBA amended Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 6301 *et seq.*, to "ensure that all children have a fair, equal, and significant opportunity to obtain a high-quality education and reach, at a minimum, proficiency on challenging State academic achievement standards and [S]tate academic assessments." NCLBA § 101, tit. I, § 1001, 115 Stat. 1439 (2002). The Reading First program, 20 U.S.C. §§ 6361-6368, was created by Part B, Subpart 1, of the amended Title I. The purposes of the Reading First program include "provid[ing] assistance to State educational agencies [SEAs] and local educational agencies in establishing reading programs for students in kindergarten through grade 3 that are based on scientifically based reading research, to ensure that every student can read at grade level or above not later than the end of grade 3." 20 U.S.C. § 6361(1).

2

Each SEA is authorized under the Reading First program to apply to the Secretary for a grant of not more than six years' duration from amounts appropriated for that purpose. 20 U.S.C. §§ 6362(a)(1), (2). Each SEA uses its funds to make "competitive subgrants to eligible local educational agencies" and for certain other specified purposes. *Id.* §§ 6232(a)(1), (c)(1). Subgrants are used to "[s]elect[] and implement[] a learning system or program of reading instruction based on scientifically based reading research" that meets certain requirements. *Id.* § 6362(c)(7)(A)(ii). Subgrants are also used to "[p]rocur[e] and implement[] instructional materials, including education technology such as software and other digital curricula, that are based on scientifically based reading research." *Id.* § 6367(c)(7)(A)(iii).

In consultation with the National Institute of Literacy, the Secretary is required to "convene a panel to evaluate applications under [the Reading First Program]" and to "recommend [such applications] to the Secretary for funding or disapproval." 20 U.S.C. §§ 6363(c)(2)(A), (C). "At a minimum," the panel must include three individuals appointed apiece by the Secretary, the National Institute for Literacy, the National Research Council of the National Academy of Sciences, and the National Institute of Child Health and Human Development. *Id.* § 6363(c)(2)(A).

Each SEA that receives a grant under the Reading First program must submit a "progress report" to the Secretary "[n]ot later than 60 days after the termination of the third year of the grant period." 20 U.S.C. § 6362(e)(1)(A). The progress report must include among other things "information on the progress the [SEA] and local educational agencies within the State are making in reducing the numbers of students served under this subpart in grades 1, 2, and 3 who are reading below grade level." *Id.* § 6362(e)(1)(B). The progress report must be reviewed by

3

the panel convened under § 6362(c)(2)(A). *Id.* § 6363(e)(2). The Secretary may withhold further payments to the SEA under the Reading First program or take other action if he or she determines after submission of the progress report that the SEA is not making "significant progress in meeting the purposes of this subpart." *Id.* § 6362(e)(3).

      B.    <u>FACA</u>

FACA, Pub. L. No. 92-463, 86 Stat. 769 (1972), was enacted "to promote the effective use of advisory committees in the executive branch of the Government." H.R. Rep. No. 92-1017, at 1 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 3491, 3491. For purposes of FACA, the term "advisory committee" includes any group, other than one composed entirely of federal employees, established or utilized by a federal agency for the purpose of obtaining advice or recommendations for itself or its officers. FACA § 3(2). Certain "procedural and operating requirements" are imposed by FACA on any advisory committee to which FACA applies. *Natural Res. Def. Council (NRDC) v. EPA*, 806 F. Supp. 275, 276 (D.D.C. 1992). Among other things, and with certain exceptions, a charter must be filed for each such advisory committee; notice of the meetings of each such advisory committee must be published in the Federal Register; the meetings must be "open to the public"; "detailed minutes" of the meetings must be kept; "interested persons" must be "permitted to attend, appear before, or file statements with [the] committee"; the membership of the committee must be "fairly balanced in terms of the points of view represented and the functions to be performed"; and provision must be made to "assure that the advice and recommendations of [the committee] will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of

4

[the committee's] independent judgment." FACA §§ 5(b)(2)-(3), 9(c), 10(a)(1)-(3), 10(c).  In

addition,

> [s]ubject to section 552, of title 5, United States Code [the Freedom of
> Information Act (FOIA)], the records, reports, transcripts, minutes, appendixes,
> working papers, drafts, studies, agenda or other documents which were made
> available to or prepared for or by each advisory committee shall be available for
> public inspection and copying at a single location in the offices of the advisory
> committee or the agency to which the advisory committee reports until the
> advisory committee ceases to exist.

FACA § 10(b).

## STATEMENT OF FACTS

A.    The Old Panel

Following the enactment of NCLBA, the Secretary solicited recommendations for

panelists from each of the four organizations designated in 20 U.S.C. § 6362(c)(2)(A).  After

selecting the panelists, DOED created subpanels "to review the State applications and

recommend either approval or disapproval to the Secretary." Compl. ex. A at 6.  The subpanels

are referred to collectively herein as the "Old Panel."

In addition, DOED "created the *Reviewer Guidance for the Reading First Program*

(Reviewer Guidance), which describe[d] the process by which panelists [would] review

applications and provide their comments." Compl. ex. A at 8.  "The Reviewer Guidance, which

[DOED] provided to panelists, state[d] that it [was] the reviewer's responsibility to provide a

rating for each review criterion and constructive strength and weakness comments on the

Technical Review Form." *Id.*  "The guidance state[d] that the panel chair [would] complete an

additional summary sheet, called the Panel Chair Summary, which [would] reflect a consensus

rating and supporting comments for each criterion." *Id.*  "The guidance also state[d] that the

5

Panel Chair Summary [would] provide an overall consensus recommendation for approval or disapproval of the application." *Id.*

In accordance with the Reviewer Guidance, "[t]he panelists recorded their individual comments on the Technical Review Forms, and then met to discuss these comments." Compl. ex. A at 8. "The panel chair then entered a consensus rating on a Panel Chair Summary, which was submitted to [DOED's] Reading First office." *Id.*

B.      The Report of the DOED Office of Inspector General (DOED OIG)

In September 2006, DOED OIG issued a report (OIG Report) entitled *The Reading First Program's Grant Application Process*, Final Inspection Report No. ED-OIG/113-F0017. Among other things, the OIG Report criticized the fact that "[a] majority of the panelists were nominated by [DOED] for 15 of the 16 subpanels; and 7 of the 16 subpanels consisted entirely of [DOED]-selected panelists." Compl. ex. A at 6. In addition, the OIG Report criticized the absence of any indication "that the subpanels ever met as one large panel to review the State applications and/or recommend approval or disapproval to the Secretary." *Id.*

In other respects, the OIG Report made favorable comments about the Old Panel. Stating that "[t]he expert review panel appears to have reviewed the applications in accordance with criteria developed by [DOED] and applied the criteria consistently," the OIG Report said: "The panelists adequately documented their reasons for stating that an application was unready for funding. * * * * The Panel Chair Summary appeared to contain constructive comments to support the panel's ratings." Compl. ex. A at 1, 8.

Following the issuance of the OIG Report, DOED assigned responsibility for administration of the Reading First program to the Academic Improvement and Teacher Quality

6

Programs Division of the Office of Elementary and Secondary Education. Butler Decl. ¶ 2. The individuals who "managed [DOED's] Reading First application process" prior to the issuance of the OIG Report "are no longer employed at [DOED]." *Id.* ¶ 3.

C.    This Action

By letter to the Secretary dated November 6, 2006, the executive director of plaintiff characterized the OIG report as having found "numerous violations of both the letter and spirit of various provisions of [NCLBA]." Compl. ex. G at 1. Alleging that the Old Panel was an advisory committee under FACA, the executive director requested the following records: "Subject to the provisions of [FOIA], all 'records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee,' as mandated by [FACA] § 10(b)." *Id.* ex. G at 2.

On December 7, 2006, plaintiff commenced this action under FACA and the Administrative Procedure Act (APA). Compl. ¶ 1. Alleging that defendants failed to comply with "FACA's open meetings and disclosure requirements in the operation of [the Old Panel]," plaintiff seeks a judgment declaring that defendants have violated FACA with respect to the Old Panel and an order directing defendants to "respond to Plaintiff's request under [FACA] § 10(b)"; further directing defendants to "publish notice in advance of all future meetings of the Reading First Committee"; and enjoining defendants from "utilizing, consulting, or obtaining information or advice from Reading First panels until Defendants comply fully with all provisions of FACA, including the drafting of a charter."[1]  *Id.* prayer ¶¶ 1-3, 5-8.

---

[1]Plaintiff brings suit under the APA because "FACA does not provide a private cause of action." *See NRDC v. Abraham*, 223 F. Supp. 2d 162, 176 (D.D.C. 2002), *set aside in part, other grounds*, 353 F.3d 40 (D.C. Cir. 2004).

Following the commencement of this action, defendants initiated settlement discussions. Those discussions have now reached an impasse.

D.    The New Panel

On March 1, 2007, the Secretary published a notice in the Federal Register announcing her intention to establish a new panel under 20 U.S.C. § 6363(c)(2)(A) (New Panel) to be known as the Reading First Advisory Committee. Def. Mot. Stay Proceedings & Mem. Supp't Thereof (Def. Mem.) ex. A at 1. The Secretary further announced that FACA would govern the New Panel and its activities, and that the New Panel would do all of the remaining work that otherwise would have been the responsibility of the Old Panel. *Id.* The Secretary said:

> [FACA] will govern the [New Panel]. * * * *
>
> The activities of the panel * * * will be governed by FACA.
>
> States submitted their Reading First applications to [DOED] in 2002 and 2003. Currently, [DOED] has approved the Reading First applications of all applicants but one. The [New Panel] will evaluate this remaining application and, at the request of [DOED], may review issues identified in other State applications.
>
> States submitted their third-year progress reports to [DOED] on or before November 30, 2006. * * * * By statute, the [New Panel] will review these reports. In addition, the [New Panel] may advise the Secretary on other issues that the Secretary deems appropriate.

*Id.*

E.    The Stay Motion

DOED has conducted a review of its "Reading First program office files." Butler Decl. ¶¶ 5, 4. Based upon this review, DOED has concluded that the following documents "are the only documents that we possess that were made available to or prepared for or by the panels that reviewed the Reading First applications that [SEAs] submitted to [DOED]": the preliminary and

8

final versions of the Reading First Applications that SEAs submitted to DOED; the Reading First
Criteria for Review of State Applications that DOED provided to peer reviewers; the Technical
Review Form Summary Sheets of individual panelists reviewing Reading First applications; and
the Panel Chair Summary Forms relative to all versions of the the Reading First applications
submitted by the SEAs. *Id.* ¶ 5. Pending completion of the settlement discussions, defendants
have not yet begun producing these documents to plaintiff. Without conceding the applicability
of FACA to the Old Panel, defendants now propose to begin the production process. Defendants
will produce all of the documents in full, except any portion thereof that is covered by an
applicable exemption to FOIA.[2] Defendants will produce the documents in batches, as their
review is completed. Lin Decl. ¶ 5. However, DOED estimates that the review of all of the
documents will take until approximately June 29, 2007. *Id.* ¶ 6. DOED bases this estimate on
the volume of material involved (estimated to meet or exceed 35,000 pages) and time constraints
placed on the personnel assigned to review that material. *Id.* ¶¶ 4, 6.

Defendants believe that production of the above documents to plaintiff will moot this
action or, at the very least, go very far toward doing so. Accordingly, defendants have moved for
an order staying all proceedings in this action through June 29, 2007, so that all non-exempt
portions of the above documents may be produced.

---

[2]Plaintiff does not seek material that is covered by an applicable exemption to FOIA. *See*
Compl. prayer ¶ 4 (asking that DOED be directed to "immediately release all records responsive
to Plaintiff's request [under FACA § 10(b)], subject to the appropriate exemptions under
FOIA").

**ARGUMENT**

NONE OF THE ARGUMENTS MADE BY PLAINTIFF IN OPPOSITION TO DEFENDANTS' MOTION FOR A STAY IS PERSUASIVE.

I.     THE DOCUMENTS THAT DEFENDANTS PROPOSE TO PRODUCE ARE ALL OF THE DOCUMENTS THAT DEFENDANTS WOULD BE OBLIGATED TO PRODUCE IF FACA WERE HELD APPLICABLE TO THIS CASE.

"[U]nder section 10(b) of FACA, an agency is generally obligated to make available for public inspection and copying all materials that were made available to or prepared for or by an advisory committee." *Food Chem. News v. Dep't of HHS*, 980 F.2d 1468, 1469 (D.C. Cir. 1992). However, the obligation to produce extends solely to the documents that the agency possesses. In *Physicians Committee for Responsible Medicine v. Glickman*, 117 F. Supp. 2d 1 (D.D.C. 2000), the plaintiffs requested discovery to test the accuracy of the defendants' representation that "'all documents which were made available to or prepared for or by [a certain advisory committee]' ha[d] been made available to the public." 117 F. Supp. 2d at 4. In support of their request, the plaintiffs alleged that "Committee working groups generated documents that were never produced" and that "additional records must exist in the form of email communications between working group members or notes from private meetings." *Id.*  Holding that "[d]iscovery to pursue a suspicion or a hunch [was] unwarranted," the court said: "It may well be that Committee members exchanged personal emails and telephone conversations. There is no evidence, however, that the *agency* ever had records describing these events. An agency 'is under no duty to disclose documents not in its possession.'" *Id.* (quoting *Rothschild v. Dep't of Energy*, 6 F. Supp. 2d 38, 40 (D.D.C. 1998)) (court's emphasis).

10

In this case, the documents that defendants propose to produce are all of the documents in "[DOED's] Reading First program office files" that were "made available to or prepared for or by" the Old Panel. Butler Decl. ¶ 5. Accordingly, the documents that defendants propose to produce are all of the documents that defendants would have an obligation to produce if FACA § 10(b) were held to apply to the Old Panel.

The stay of proceedings that defendants seek – through June 29, 2007 – is not lengthy. During the period of the stay, DOED will be busy reviewing an estimated 35,000 pages for release to plaintiff. Plaintiff does not allege, let alone show, that it will be harmed if proceedings are stayed in this case while DOED conducts this review.

II.     THE ALLEGED NEED FOR DEFENDANTS TO PROVIDE ADDITIONAL ASSURANCES THAT THEY WILL COMPLY WITH FACA IN THEIR ADMINISTRATION OF THE READING FIRST PROGRAM IN THE FUTURE IS NOT AN ISSUE THAT IS RIPE FOR JUDICIAL CONSIDERATION.

"The doctrines of mootness, ripeness, and political question all originate in Aricle III's 'case' or 'controversy' language, no less than standing does." *DaimlerChrysler Corp. v. Cuno*, 126 S. Ct. 1854, 1867 (2006). For a case or controversy to exist, "'[a] plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'" *Id.* at 1861 (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)). The alleged injury must be "'actual or imminent,'" not "'conjectural or hypothetical.'" *See id.* at 1862 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

In this case, plaintiff asks that defendants' motion for a stay be denied because DOED "has failed to give even the most basic assurance that in further implementing the Reading First Program, it will comply fully with the FACA." Pl. Mem. at 3. However, plaintiff bases this

11

request on "the very serious FACA violations [allegedly] committed by the defendants in their

implementation *to date* of the Reading First Initiative." *See id.* at 10 (emphasis supplied).

Accordingly, plaintiff ignores the recent announcement of the Secretary that the Old Panel has

been superseded by the New Panel and that the New Panel and its activities will be governed by

FACA. *See* Def. Mem. ex. A at 1. This announcement precludes the assumption that "the very

serious FACA violations [allegedly] committed by the defendants in their implementation to date

of the Reading First Initiative" will continue. Because any such assumption is "'conjectural

[and] hypothetical,'" the alleged need for defendants to provide additional assurances that they

will comply with FACA in their administration of the Reading First program in the future is not

an issue that is ripe for judicial consideration. *See DaimlerChrysler*, 126 S. Ct. at 1862, 1867.

Accordingly, the alleged need for such assurances is not a justification for the denial of

defendants' motion for a stay.

III.    THE ALLEGED NEED FOR DEFENDANTS TO TAKE FURTHER REMEDIAL
        ACTION TO DEAL WITH CERTAIN DEFICIENCIES IN THE ADMINISTRATION
        OF THE READING FIRST PROGRAM THAT ALLEGEDLY HAVE EXISTED IN
        THE PAST IS NOT AN ISSUE THAT THIS LAWSUIT RAISES OR AN ISSUE THAT
        PLAINTIFF HAS STANDING TO RAISE.

        Plaintiff also asks that defendants' motion for a stay be denied because defendants have

failed to take action that plaintiff deems sufficient to address the "conflicts of interest and serious

mismanagement" that allegedly have "plagued" the Reading First program. Pl. Mem. at 3; *see id.*

at 11-12. However, plaintiff brings this action "to compel the defendants to comply with

[FACA] in their administration of the Reading First Program." *Id.* at 1. FACA is not a general

remedial statute for members of the public who feel that a particular federal program has been

"mismanage[d]." To the contrary, the "purpose[s]" of FACA are merely to ensure that "new

advisory committees be established only when essential and that their number be minimized";

that such committees "be terminated when they have outlived their usefulness"; that the

"creation, operation, and duration [of such committees] be subject to uniform standards and

procedures"; that "Congress and the public remain apprised of their existence, activities, and

cost"; and that "their work be exclusively advisory in nature." *Pub. Citizen v. U.S. Dep't of

Justice*, 491 U.S. 440, 446 (1989). Because FACA is not a general remedial statute, the alleged

need for defendants to take further remedial action to deal with the deficiencies in the

administration of the Reading First program that allegedly have existed in the past is not an issue

that this lawsuit raises.

> Nor does plaintiff have standing even to raise the issue. The Supreme Court has
>
> "consistently held that a plaintiff raising only a generally available grievance
> about government – claiming only harm to his and every citizen's interest in
> proper application of the Constitution and laws, and seeking relief that no more
> directly and tangibly benefits him than it does the public at large – does not state
> an Article III case or controversy."

*Lance v. Coffman*, 127 S. Ct. 1194, 1196 (2007) (quoting *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 573-74 (1992)).

In this case, plaintiff does not allege that it has been injured by the deficiencies in the

administration of the Reading First program that allegedly have existed in the past. To the

contrary, the sole allegation of injury that plaintiff makes is that defendants have hindered its

ability to "obtain information concerning [the Old Panel] and [its] recommendations and to

disseminate that information to the public" by failing "comply with FACA's open meetings and

disclosure requirements in the operation of [the Old Panel]." Compl. ¶¶ 1, 8. Because of the

limited nature of the allegation of injury that plaintiff makes, the alleged need for defendants to

13

take further remedial action to deal with the deficiencies in the administration of the Reading First program that allegedly have existed in the past is neither an issue that this lawsuit raises nor an issue that plaintiff has standing to raise. Accordingly, it is not an issue that justifies the denial of defendants' motion for a stay.

### CONCLUSION

For the foregoing reasons, defendants' motion for a stay of proceedings should be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney

ELIZABETH J. SHAPIRO, DC Bar 418925
DAVID M. GLASS, DC Bar 544549
Attorneys, Department of Justice
20 Mass. Ave., N.W., Room 7200
Washington, D.C. 20530
Tel: (202) 514-4469
Fax: (202) 616-8470
E-mail: david.glass@usdoj.gov
Attorneys for Defendants

Dated: March 29, 2007

14

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY AND        )
ETHICS IN WASHINGTON,                  )          No. 1:06-cv-02086-HHK
                                       )
                          Plaintiff,   )
                                       )
                v.                     )          DECLARATION OF
                                       )          JAMES BUTLER
MARGARET SPELLINGS, Secretary of       )
Education, et al.,                     )
                                       )
                          Defendants.  )
                                       )

JAMES BUTLER says:

1.  I am currently the Group Leader of Teacher Quality Programs in the Academic Improvement and Teacher Quality Programs (AITQP) Division of the U.S. Department of Education's Office of Elementary and Secondary Education.

2.  AITQP is the division of the Office of Elementary and Secondary Education that administers the Reading First program.   AITQP was assigned responsibility for administering the Reading First program after the U.S. Department of Education's Office of Inspector General issued its September 2006 Inspection Report on the Department's early implementation of Reading First.  Prior to this time, I did not have any involvement in or knowledge of the Reading First application review process.

3.  Prior to September 2006, individuals who are no longer employed at the Department managed the Department's Reading First application review process.

4.  As the newly assigned Group Leader of Teacher Quality programs, I have examined the files containing the Department's Reading First documents.

5.   The Department's Reading First program office files contain the following documents. To the best of my knowledge, information, and belief, these documents are the only documents that we possess that were made available to or prepared for or by the panels that reviewed the Reading First applications that State educational agencies (SEAs) submitted to the Department:

  a.   the preliminary and final versions of the Reading First applications that SEAs submitted to the Department;

  b.   the Reading First criteria for Review of State applications that the Department provided to peer reviewers;

  c.   the Technical Review Form Summary Sheets of individual panelists reviewing Reading First applications; and

  d.   the Panel Chair Summary Forms relative to all versions of the Reading First applications submitted by SEAs.

6.   I declare under penalty of perjury that the foregoing is true and correct.

Executed March 28, 2007.

JAMES BUTLER