UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————————

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) No. 1:06-cv-02086-HHK ) |
| MARGARET SPELLINGS, Secretary of Education, *et al.*, | ) ) ) |
| Defendants. | ) ) |

———————————————————————

### DEFENDANTS' MOTION TO DISMISS

Defendants hereby move to dismiss this action for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) on the ground that the action is moot. The grounds for defendants' motion are set forth in greater detail in the memorandum submitted herewith.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

 s/*John R. Coleman*
ARTHUR R. GOLDBERG, D.C. Bar 180661
Assistant Branch Director
JOHN R. COLEMAN
Attorney, Department of Justice
20 Mass. Ave., N.W., Room 6118
Washington, D.C. 20530
Tel: (202) 514-4505/Fax: (202) 616-8460
E-mail: john.coleman3@usdoj.gov

Dated: September 21, 2007          Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | ) | |
| CITIZENS FOR RESPONSIBILITY AND | ) | |
| ETHICS IN WASHINGTON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:06-cv-02086-HHK |
| | ) | |
| MARGARET SPELLINGS, Secretary of | ) | |
| Education, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

### PRELIMINARY STATEMENT

In this action under the Federal Advisory Committee Act (FACA), 5 U.S.C. App. 2, and

the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, *et seq.*,[1] plaintiff, Citizens for

Responsibility and Ethics in Washington, alleges that defendants, the Secretary of Education

(Secretary) and the Department of Education (DOED), have failed to comply with "FACA's

open meetings and disclosure requirements" in the operation of a certain alleged advisory

committee (Old Panel).  Compl. ¶ 1.  Accordingly, plaintiff seeks a judgment declaring that

defendants have violated FACA with respect to the Old Panel.  *Id.*, Prayer ¶¶ 1-2.  In addition,

plaintiff seeks an order directing defendants to "publish notice in advance of all future meetings

of [the Old Panel]"; enjoining defendants from "utilizing, consulting, or obtaining information or

advice from [the Old Panel] until Defendants comply fully with all provisions of FACA,

_____

[1]Plaintiff brings suit under the APA because "FACA does not create a private cause of
action."  *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 374-375 (2004).
"[H]owever, [] FACA's substantive requirements c[an] be enforced against . . . agency
defendants under the Administrative Procedure Act (APA), 5 U.S.C. § 706."  *Id.*

including the drafting of a charter"; and directing defendants to comply with plaintiff's request under FACA § 10(b) for records pertaining to the Old Panel. *Id.*, Prayer ¶¶ 3-4, 6, 8.

Since the commencement of this action, however, defendants have established an advisory committee (New Panel), governed by FACA, that is undertaking the work that otherwise would have been the responsibility of the Old Panel. In addition, defendants have produced the records concerning the old panel that plaintiff requested pursuant to FACA § 10(b). Because of the chartering of the New Panel and the production of the responsive records, this case should be dismissed as moot.

## THE STATUTORY SCHEME

A.    <u>The No Child Left Behind Act of 2001 (NCLBA), Pub. L. No. 107-110, 115 Stat. 1425 (2002), and the Reading First Program</u>

NCLBA amended Title I of the Elementary and Secondary Education Act of 1965, 20 U.S.C. § 6301, *et seq.*, to "ensure that all children have a fair, equal, and significant opportunity to obtain a high-quality education and reach, at a minimum, proficiency on challenging State academic achievement standards and [S]tate academic assessments." NCLBA § 101, tit. I, § 1001, 115 Stat. 1439 (2002). The Reading First program, 20 U.S.C. §§ 6361-6368, was created by Part B, Subpart 1, of the amended Title I. The purposes of the Reading First program include "provid[ing] assistance to State educational agencies [SEAs] and local educational agencies in establishing reading programs for students in kindergarten through grade 3 that are based on scientifically based reading research, to ensure that every student can read at grade level or above not later than the end of grade 3." 20 U.S.C. § 6361(1).

Each SEA is authorized under the Reading First program to apply to the Secretary for a grant of not more than six years duration from amounts appropriated for that purpose. 20 U.S.C.

§§ 6362(a)(1), (2). Each SEA uses its funds to make "competitive subgrants to eligible local educational agencies" and for certain other specified purposes. *Id.* §§ 6232(a)(1), (c)(1), (d). Subgrants are used to "[s]elect[] and implement[] a learning system or program of reading instruction based on scientifically based reading research" that meets certain requirements. *Id.* § 6362(c)(7)(A)(ii). Subgrants are also used to "[p]rocur[e] and implement[] instructional materials, including education technology such as software and other digital curricula, that are based on scientifically based reading research." *Id.* § 6367(c)(7)(A)(iii).

In consultation with the National Institute of Literacy, the Secretary is required to "convene a panel to evaluate applications [of SEAs] under [the Reading First Program]" and to "recommend [such applications] to the Secretary for funding or for disapproval." 20 U.S.C. §§ 6363(c)(2)(A), (C). "At a minimum," the panel must include three individuals selected by the Secretary, three individuals selected by the National Institute for Literacy, three individuals selected by the National Research Council of the National Academy of Sciences, and three individuals selected by the National Institute of Child Health and Human Development. *Id.* § 6363(c)(2)(A).

Each SEA that receives a grant under the Reading First program "shall submit a progress report to the Secretary" "[n]ot later than 60 days after the termination of the third year of the grant period." 20 U.S.C. § 6362(e)(1)(A). The progress report must include among other things "information on the progress the [SEA] and local educational agencies within the State are making in reducing the numbers of students served under this subpart in grades 1, 2, and 3 who are reading below grade level." *Id.* § 6362(e)(1)(B). The progress report must be reviewed by the panel convened under § 6363(c)(2). *Id.* § 6362(e)(2). The Secretary may withhold further

payments to the SEA under the Reading First program or take other action if he or she

determines after submission of the progress report that the SEA is not making "significant

progress in meeting the purposes of [the Reading First Program]." *Id.* § 6362(e)(3).

    B.    The Federal Advisory Committee Act

    FACA, Pub. L. No. 92-463, 86 Stat. 769 (1972), 5 U.S.C. App. 2, was enacted "to

promote the effective use of advisory committees in the executive branch of the Government."

H.R. Rep. No. 92-1017, at 1 (1972), *as reprinted in* 1972 U.S.C.C.A.N. 3491, 3491.  For

purposes of FACA, the term "advisory committee" includes any group, other than one composed

entirely of federal employees, established or utilized by a federal agency for the purpose of

obtaining advice or recommendations for itself or its officers.  FACA § 3(2).  Certain

"procedural and operating requirements" are imposed by FACA on any advisory committee to

which FACA applies.  *Natural Res. Def. Council (NRDC) v. EPA*, 806 F. Supp. 275, 276

(D.D.C. 1992).  Among other things, and with certain exceptions, a charter must be filed for each

such advisory committee; notice of the meetings of each such advisory committee must be

published in the Federal Register; the meetings must be "open to the public"; "detailed minutes"

of the meetings must be kept; "interested persons" must be "permitted to attend, appear before,

or file statements with [the] committee"; the membership of the committee must be "fairly

balanced in terms of the points of view represented and the functions to be performed"; and

provision must be made to "assure that the advice and recommendations of [the committee] will

not be inappropriately influenced by the appointing authority or by any special interest, but will

instead be the result of [the committee's] independent judgment."  FACA §§ 5(b)(2)-(3), 9(c),

10(a)(1)-(3), 10(c).  In addition:

> [s]ubject to section 552, of title 5, United States Code [the Freedom of Information Act (FOIA)], the records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda or other documents which were made available to or prepared for or by each advisory committee shall be available for public inspection and copying at a single location in the offices of the advisory committee or the agency to which the advisory committee reports until the advisory committee ceases to exist.

FACA § 10(b).

## STATEMENT OF FACTS

A.    The Old Panel

Following the enactment of NCLBA, the Secretary solicited recommendations for panelists from each of the four organizations designated in 20 U.S.C. § 6362(c)(2)(A).  After selecting the panelists, DOED created subpanels "to review the State applications and recommend either approval or disapproval to the Secretary."  Compl. ex. A at 6.  The subpanels are referred to collectively herein as the "Old Panel."

In addition, DOED "created the *Reviewer Guidance for the Reading First Program* (Reviewer Guidance), which describe[d] the process by which panelists [would] review applications and provide their comments."  Compl. ex. A at 8.  "The Reviewer Guidance, which [DOED] provided to panelists, state[d] that it [was] the reviewer's responsibility to provide a rating for each review criterion and constructive strength and weakness comments on the Technical Review Form."  *Id.*  "The guidance state[d] that the panel chair [would] complete an additional summary sheet, called the Panel Chair Summary, which [would] reflect a consensus rating and supporting comments for each criterion."  *Id.*  "The guidance also state[d] that the Panel Chair Summary [would] provide an overall consensus recommendation for approval or disapproval of the application."  *Id.*

5

In accordance with the Reviewer Guidance, "[t]he panelists recorded their individual comments on the Technical Review Forms, and then met to discuss these comments." Compl. ex. A at 8. "The panel chair then entered a consensus rating on a Panel Chair Summary, which was submitted to [DOED's] Reading First office." *Id.*

B.     The Report of the DOED Office of Inspector General (DOED OIG)

In September 2006, DOED OIG issued a report (OIG Report) entitled *The Reading First Program's Grant Application Process*, Final Inspection Report No. ED-OIG/113-F0017 (attached as Exhibit A to the Complaint). Among other things, the OIG Report criticized the fact that "[a] majority of the panelists were nominated by [DOED] for 15 of the 16 subpanels; and 7 of the 16 subpanels consisted entirely of [DOED]-selected panelists." Compl. ex. A at 6. In addition, the OIG Report criticized the absence of any indication "that the subpanels ever met as one large panel to review the State applications and/or recommend approval or disapproval to the Secretary." *Id.*

In other respects, the OIG Report made favorable comments about the Old Panel. Stating that "[t]he expert review panel appears to have reviewed the applications in accordance with criteria developed by [DOED] and applied the criteria consistently," the OIG Report said: "The panelists adequately documented their reasons for stating that an application was unready for funding. * * * * The Panel Chair Summary appeared to contain constructive comments to support the panel's ratings." Compl. ex. A at 1, 8.

Following the issuance of the OIG Report, DOED assigned responsibility for administration of the Reading First program to the Academic Improvement and Teacher Quality Programs Division of the Office of Elementary and Secondary Education. Second Butler Decl.

¶ 2, Ex. A hereto.  The individuals who "managed [DOED's] Reading First application process" prior to the issuance of the OIG Report "are no longer employed at [DOED]."  *Id.*

     C.     <u>Plaintiff's Request for Records and the Commencement of This Action</u>

By letter to the Secretary dated November 6, 2006, the executive director of plaintiff characterized the OIG report as having found "numerous violations of both the letter and spirit of various provisions of [NCLBA]." Compl. ex. G at 1.  Alleging that the Old Panel was an advisory committee under FACA, the executive director requested the following records: "Subject to the provisions of [FOIA], all 'records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee,' as mandated by [FACA] § 10(b)."  *Id.* ex. G at 2.

On December 7, 2006, plaintiff commenced this action.  Settlement discussions ensued but were inconclusive.

     D.     <u>The New Panel</u>

On March 1, 2007, the Secretary published a notice in the Federal Register announcing her intention to establish a new panel under 20 U.S.C. § 6363(c)(2)(A), to be known as the Reading First Advisory Committee, referred to herein as the "New Panel." 72 Fed. Reg. 9,311 (Mar. 1, 2007).  The Secretary further announced that FACA would govern the New Panel and its activities, and that the New Panel would do all of the remaining work that otherwise would have been the responsibility of the Old Panel.  *Id.* at 9,311-12.

On March 21, 2007, the Secretary issued a charter for the New Panel under FACA.  Ex. B hereto at 2.  Stating that the "activities of the [New Panel] will be governed by [FACA], which establishes the standards for the formulation and use of advisory committees," the charter states:

The [New Panel] will evaluate the application of the one State educational agency whose application has not yet been approved by [DOED] and at the request of [DOED], may review issues identified in other State applications.

The [New Panel] will also review the third-year progress reports submitted by States to [DOED] on or before November 30, 2006. The reports include, among other things, information on the progress State educational agencies and local educational agencies are making reducing the number of students served under the Reading First program in grades 1, 2, and 3 who are reading below grade level. In addition, the Committee may advise the Secretary on other issues that the Secretary deems appropriate.

The [New Panel] will carry out its responsibilities as advisory functions to the Secretary.

*Id.*

By notice published in the Federal Register on August 2, 2007, DOED announced the date and location of the first meeting of the New Panel, as well as a tentative agenda. 72 Fed. Reg. 42,403 (Aug. 2, 2007). This notice also informed the public that records of the New Panel's proceedings would be "available for public inspection at 400 Maryland Ave., S.W., Washington, D.C. 20202, from the hours of 9 a.m. to 5 p.m., Eastern Standard Time, Monday through Friday." *Id.* The membership of the New Panel was selected pursuant to the NCLBA, and is published on DOED's website.[2]

At its first meeting, the New Panel "discussed Puerto Rico's Reading First application and recommended that [DOED] disapprove Puerto Rico's application on the basis that Puerto Rico did not adequately address certain application requirements." 72 Fed. Reg. 51,629 (Sept. 10, 2007). The New Panel "made specific recommendations for improving the application, which [DOED] provided to Puerto Rico." *Id.* The New Panel will hold a telephonic conference,

---

[2]*See* Reading First Advisory Committee Membership, *available at* http://www.ed.gov/programs/readingfirst/advisory.html.

8

also open to the public, on September 24, 2007, to "review and discuss the revisions that Puerto

Rico has made to its application and recommend approval or disapproval of the revised

application." *Id.*

     E.     <u>The Production of the Responsive Records</u>

     In response to plaintiff's request for records, DOED "searched the files containing

[DOED's] Reading First documents."  Second Butler Decl. ¶ 3.  These files contain the

following documents:

     (1)     the preliminary and final versions of the Reading First Applications that SEAs
submitted to [DOED];

     (2)     the Reading First Criteria for Review of State Applications that [DOED] provided
to peer reviewers;

     (3)     the Technical Review Form Summary Sheets of individual panelists reviewing
Reading First applications; and

     (4)     the Panel Chair Summary Forms relative to all versions of the Reading First
applications submitted by SEAs.

*Id.* ¶ 4.  This list represents "all of the documents in [DOED's] possession that were made

available to or prepared for or by the panels that reviewed the Reading First applications." *Id.* ¶

5.

     On June 29, 2007, DOED began producing compact discs containing these records to

plaintiff.  *Id.* ¶ 6.  By July 17, 2007, defendant had produced 27 compact discs containing "all of

the above-referenced documents in [DOED's] possession, except for limited portions that

contained personally identifiable information."  *Id.*  The approximately 62,000 pages of

documents produced to plaintiff represents the entirety of documents that were made available to

or prepared for or by the Old Panel.  *Id.* ¶¶ 6, 7.

9

Subsequent to this production, plaintiff challenged certain redactions made pursuant to the FOIA, 5 U.S.C. § 552(b).  Specifically, plaintiff challenged the redaction of a number of resumes attached to the State applications, and the redaction of signatures from the Technical Review Form Summary Sheets and the Panel Chair Summary Forms.  *Id.* ¶¶ 9, 10.  DOED has reprocessed the resumes to redact only personally identifiable information, and produced these reprocessed records to plaintiff on September 28, 2007.  *Id.* ¶ 9.  In addition, DOED has agreed to provide the signatures from the Technical Review Form Summary Sheets and Panel Chair Summary Forms by Friday, September 28, 2007.  *Id.* ¶ 10.

**ARGUMENT**

**BECAUSE OF THE CHARTERING OF THE NEW PANEL AND THE PRODUCTION OF THE RESPONSIVE RECORDS, THIS CASE SHOULD BE DISMISSED AS MOOT.**

Article III's "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate," and therefore "[t]he parties must continue to have a 'personal stake in the outcome' of the lawsuit."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477-78 (1990)).  The Supreme Court has described the doctrine of mootness as "the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its litigation."  *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) (quoting *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980)).  Thus, a case is moot when it has "'lost its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract questions of law.'"  *Schering Corp. v. Shalala*, 995 F.2d 1103, 1106 (D.C. Cir. 1993) (quoting *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (per curiam)).  Although "the abstract proposition that voluntary cessation

10

of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case" is well-settled, it is also established that a "case may nevertheless be moot if the defendant[s] can demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" *United States v. W.T. Grant*, 345 U.S. 629, 632-33 (1953) (quoting *United States v. Aluminum Co. of Am.*, 148 F.2d 416, 448 (2d Cir. 1945)).

In this case, plaintiff seeks two things. First, plaintiff seeks declaratory and injunctive relief with respect to defendants' alleged noncompliance with FACA in connection with the Old Panel. Compl., Prayer ¶¶ 1-2, 6, 8. Defendants' chartering of the New Panel, which has been conducting its business in compliance with the requirements of FACA, makes this request moot because defendants' "allegedly wrongful behavior could not reasonably be expected to recur." *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, — U.S. —, 127 S.Ct. 2738, 2751 (2007) (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 189 (2000)). Second, plaintiff seeks an order directing defendants "to immediately release all records responsive to Plaintiff's request [under FACA § 10(b)], subject to the appropriate exemptions under FOIA, 5 U.S.C. § 552." Compl., Prayer ¶ 4; *see id.* ¶ 3. By producing to plaintiff "all of the documents in the Department's possession that were made available to or prepared for or by the panels that reviewed the Reading First applications," Second Butler Decl. ¶ 5, 6, defendants have complied with this request, and therefore, this claim should likewise be dismissed as moot. *See Crooker v. U.S. State Dept.*, 628 F.2d 9, 10 (D.C. Cir. 1980).

11

A.    Plaintiff's Requests for Declaratory and Injunctive Relief Related to Defendants' Alleged Non-Compliance with FACA are Moot

Plaintiff seeks declaratory and injunctive relief with respect to the alleged noncompliance of defendants with FACA in connection with the Old Panel.  In particular, plaintiff seeks a judgment declaring that defendants have violated FACA with respect to the Old Panel; an order directing defendants to "publish notice in advance of all future meetings of [the Old Panel]"; and an order enjoining defendants from "utilizing, consulting, or obtaining information or advice from [the Old Panel] until Defendants comply fully with all provisions of FACA, including the drafting of a charter."  *Id.*, Prayer ¶¶ 1, 6, 8.

Since the inception of this lawsuit, defendants have announced the creation of the New Panel, to "be governed by FACA," tasked with evaluating the single remaining SEA Reading First Application and reviewing the third year progress reports.  72 Fed. Reg. 9,311 (Mar. 1, 2007).  The Secretary has filed an advisory committee charter describing the responsibilities of the New Panel and reiterating that the New Panel will be governed by FACA. *See* Ex. 2 at 1. And, consistent with this pledge, the New Panel has begun its work and DOED has complied with all of FACA's requirements, including announcing the date and location of the first meeting of the New Panel, publishing a tentative agenda for that meeting, and informing the public of the location where the records of the New Panel would be available for inspection and copying.  *See* 72 Fed. Reg. 42,403 (Aug. 2, 2007).  At its first meeting, the New Panel "discussed Puerto Rico's Reading First application and recommended that [DOED] disapprove Puerto Rico's application on the basis that Puerto Rico did not adequately address certain application requirements."  72 Fed. Reg. 51,629 (Sept. 10, 2007).  The New Panel "made specific recommendations for improving the application, which [DOED] provided to Puerto Rico."  *Id.*

12

Another open meeting, to be conducted telephonically, is scheduled for Monday, September 24, 2007. *Id.*

Given these actions, it is simply not credible to suggest that DOED will not continue to abide by its stated and demonstrated commitment to conduct the New Panel pursuant to FACA if this case is dismissed. Indeed, "[a]t least in the absence of overwhelming evidence (and perhaps not then), it would seem inappropriate for the courts either to impute such manipulative conduct to a coordinate branch of government, or to apply against that branch a doctrine that appears to rest on the likelihood of a manipulative purpose." *Clarke v. United States*, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc) (challenge to federal statute mooted by expiration of statute). Perhaps for this reason, the United States Court of Appeals for the District of Columbia has routinely dismissed challenges to agency actions that have been rendered moot by the subsequent publication of a new or amended rule. *See, e.g.*, *Am. Bankers Ass'n v. Nat'l Credit Union Admin.*, 271 F.3d 262, 274 (D.C. Cir. 2001) (amendment of challenged rule moots challenge); *Nat'l Mining Ass'n v. United States Dept. of Interior*, 251 F.3d 1007, 1011 (D.C. Cir. 2001) (same); *Ariz. Pub. Serv. Co. v. EPA*, 211 F.3d 1280, 1295-96 (D.C. Cir. 2000) (same). In short, because this is a case involving the "voluntary cessation of allegedly illegal conduct" in which "there is no reasonable expectation that the wrong will be repeated," *W.T. Grant*, 345 U.S. at 632-33, plaintiff's request for declaratory and injunctive relief related to defendants' alleged non-compliance with FACA must be dismissed as moot.

   B.    Plaintiff's Request for Records Made Available to or Prepared for or by the Old Panel is Moot Because those Records Have Been Produced

Plaintiff also seeks an order directing defendants "to immediately release all records responsive to plaintiff's request [under FACA § 10(b)], subject to the appropriate exemptions

13

under FOIA, 5 U.S.C. § 552."  Compl., Prayer ¶ 4; *see id.* ¶ 3.  Section 10(b) of FACA requires

agencies to "make available for public inspection and copying all materials that were made

available to or prepared for or by an advisory committee" except for "those materials that the

agency reasonably claims to be exempt from disclosure pursuant to FOIA."  *Food Chem. News*

*v. Dep't Health and Human Servs.*, 980 F.2d 1468, 1469 (D.C. Cir. 1992).  DOED has "searched

the files containing the Department's Reading First documents," and produced to plaintiff all

records in its possession that were "made available to or prepared for or by" the Old Panel,

"except for limited portions that contained personally identifiable information."  Second Butler

Decl. ¶¶ 4-7.  The approximately 62,000 pages produced by DOED are currently available for

public inspection on plaintiff's website.[3]  In addition, in response to plaintiff's objection to

certain redactions, DOED has agreed to reprocess certain records to remove the challenged

redactions and produce the records by Friday, September 28, 2007.  Second Butler Decl. ¶¶ 9,

10.

     A lawsuit seeking records becomes moot when the requested records are produced,

because once production occurs, "the substance of the controversy disappears and becomes moot

since the disclosure which the suit seeks has already been made."  *Crooker v. U.S. State Dep't*,

628 F.2d 9, 10 (D.C. Cir. 1980) (per curiam); *see also Students Against Genocide v. U.S. State*

*Dep't,* 257 F.3d 828, 841 (D.C. Cir. 2001); *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982);

*Walsh v. U.S. Dept. of Veterans Affairs*, 400 F.3d 535, 536 (7th Cir. 2005) ("In general, '[o]nce

the government produces all the documents a plaintiff requests, her claim for relief under the

---

[3]*See* Reading First Documents by State, *available at* http://www.citizensforethics.org/
node/29846.

FOIA becomes moot.'" (quoting *Anderson v. U.S. Dep't of Health & Human Servs.*, 3 F.3d 1383,

1384 (10th Cir.1993)).  Accordingly, because there is no longer a live controversy regarding

plaintiff's request for the records of the Old Panel, this request is moot.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss should be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

 s/*John R. Coleman*
ARTHUR R. GOLDBERG, D.C. Bar 180661
Assistant Branch Director
JOHN R. COLEMAN
Trial Attorney, Department of Justice
20 Mass. Ave., N.W., Room 6118
Washington, D.C.  20530
Tel: (202) 514-4505/Fax: (202) 616-8460
E-mail: john.coleman3@usdoj.gov

Dated: September 21, 2007                    Attorneys for Defendants

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) No. 1:06-cv-02086-HHK |
| MARGARET SPELLINGS, Secretary of Education, *et al.*, | ) ) ) |
| Defendants. | ) ) |

**ORDER**

Upon defendants' motion to dismiss, the materials submitted in support thereof and in opposition thereto, and good cause having been shown, it is hereby ordered as follows:

1. Defendant's aforesaid motion is hereby granted.

`    2. This action is hereby dismissed with prejudice and without fees or costs.

Date: _____        _____
                                     UNITED STATES DISTRICT JUDGE

*CREW v. Spellings*, Civil Action No. 06-cv-02086-HHK

**EXHIBIT A**

**to Defendants' Memorandum In Support of
Defendants' Motion to Dismiss**

**Second Declaration of James Butler**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, | ) ) ) | No. 1:06-cv-02086-HHK |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | SECOND DECLARATION |
| v. | ) | OF JAMES BUTLER |
|  | ) |  |
| MARGARET SPELLINGS, Secretary of Education, *et al.*, | ) ) | |
|  | ) |  |
| Defendants. | ) |  |
|  | ) |  |

JAMES BUTLER says:

1.  I am the Group Leader of Teacher Quality Programs in the Academic Improvement and Teacher Quality Programs (AITQP) Division of the U.S. Department of Education's Office of Elementary and Secondary Education.

2.  AITQP is the division of the Office of Elementary and Secondary Education that administers the Reading First program.  Prior to September 2006, individuals who are no longer employed at the Department managed the Department's Reading First application review process.

3.  As the Group Leader of Teacher Quality programs, I have searched the files containing the Department's Reading First documents.

4.  The Department's Reading First program office files contain the following documents that were made available to or prepared for or by the panels that reviewed the Reading First applications that State educational agencies (SEAs) submitted to the Department:

    a.  the preliminary and final versions of the Reading First applications that SEAs submitted to the Department;

    b.  the Reading First criteria for Review of State applications that the Department provided to peer reviewers;

    c.  the Technical Review Form Summary Sheets of individual panelists reviewing Reading First applications; and

    d.  the Panel Chair Summary Forms relative to all versions of the Reading First applications submitted by SEAs.

5.  To the best of my knowledge, information, and belief, these are all of the documents in the Department's possession that were made available to or prepared for or by the panels that reviewed the Reading First applications.

6.  To the best of my knowledge, information, and belief, during the period from June 29, 2007 through July 17, 2007, the Department provided Citizens for Responsibility and Ethics in Washington (CREW) in electronic format copies of all of the above-referenced documents in the Department's possession, except for limited portions that contained personally identifiable information. The Department provided the documents, totaling approximately 62,000 pages, on 27 compact disks.

7.  To the best of my knowledge, information, and belief, the Department possesses no additional documents that were made available to or prepared for or by the panels that reviewed the Reading First applications.

8.  CREW subsequently notified us that it was unable to access the information on Disk 1 and the Department provided CREW another copy of that disk.

9.  CREW subsequently challenged the redaction of a number of resumes attached to the State applications and the Department has agreed to reprocess those records to redact only personally identifiable information, including, but not limited to, home addresses, telephone numbers, e-mail addresses, and social security numbers. The Department will provide these reprocessed records to CREW by Friday, September 28, 2007.

10.  CREW also challenged the redaction of signatures of individual panelists from the Technical Review Form Summary Sheets and the Panel Chair Summary Forms. The Department

has agreed to reprocess these records without the challenged redactions and provide them to CREW by Friday, September 28, 2007.

11. I declare under penalty of perjury that the foregoing is true and correct. Executed September 21, 2007.

JAMES BUTLER

*CREW v. Spellings*, Civil Action No. 06-cv-02086-HHK

**EXHIBIT B**

**to Defendants' Memorandum In Support of
Defendants' Motion to Dismiss**

**Reading First Advisory Committee Charter**

THE SECRETARY OF EDUCATION
WASHINGTON, DC 20202

## CHARTER

## READING FIRST ADVISORY COMMITTEE

### AUTHORITY

Sections 1203(c)(2)(A) and 1202(e)(2) of the Elementary and Secondary Education Act of 1965, as amended (ESEA) authorize the Secretary of Education to establish a panel to evaluate State Reading First applications and to review third-year progress reports submitted by States under the Reading First program. The activities of the panel (hereinafter referred to as the "Committee") will be governed by the Federal Advisory Committee Act (P.L. 92-463, as amended; 5 U.S.C., Appendix 2) (FACA), which establishes the standards for the formation and use of advisory committees.

### PURPOSE AND FUNCTIONS

The Committee will evaluate the application of the one State educational agency whose application has not yet been approved by the Department, and at the request of the Department, may review issues identified in other State applications.

The Committee will also review the third-year progress reports submitted by States to the Department on or before November 30, 2006. The reports include, among other things, information on the progress State educational agencies and local educational agencies are making in reducing the number of students served under the Reading First program in grades 1, 2, and 3 who are reading below grade level. In addition, the Committee may advise the Secretary on other issues that the Secretary deems appropriate.

The Committee will carry out its responsibilities as advisory functions to the Secretary.

### STRUCTURE

By statute, the Committee will consist, at a minimum, of three individuals selected by each of the following: the Secretary of Education, the National Institute for Literacy, the National Research Council of the National Academy of Sciences, and the National Institute of Child Health and Human Development.

Any non-Federal members of the Committee will serve as Special Government Employees (SGEs), and as SGEs, the members have been chosen for their individual expertise, qualifications, and experience. Members will provide advice and make recommendations based on their independent judgment, and will not be speaking for or representing the views of any nongovernmental organization or recognizable group of persons.

Committee members will serve for a period of three years or until the date of reauthorization of the Elementary and Secondary Education Act (ESEA), whichever is earlier. The Committee will choose one of its members to serve as the chairperson. The Team Leader for the Reading First program will serve as the Designated Federal Officer (DFO) for the Committee. As appropriate, the Committee may form one or more subcommittees to assist with committee functions.

The Office of Elementary and Secondary Education (OESE) will provide staff and administrative services to the Committee.

## MEETINGS

The DFO, in consultation with the Committee chairperson, will set the agenda for the Committee and schedule meetings on an as-needed basis. The DFO is present at all meetings. A majority of the voting members of the Committee serving at the time of the meeting shall constitute a quorum. Meetings will be open to the public, except when the Assistant Secretary for Elementary and Secondary Education determines otherwise, in accordance with section 10(d) of FACA and with the concurrence of the Office of the General Counsel.

Meetings will be conducted and records of the proceedings kept according to applicable laws and departmental regulations.

## ESTIMATED COSTS

Members who are not full-time Federal employees will be paid at a rate determined by the Secretary to attend Committee meetings plus per diem and reimbursement for travel expenses in accordance with Federal Travel Regulations.

Annual operating costs associated with supporting the Committee's functions, including direct and indirect expenses, will be approximately $100,000. Staff support will be approximately 0.2 full-time equivalents.

## TERMINATION DATE

The Committee is hereby chartered in accordance with section 14(b) of the Federal Advisory Committee Act. This charter expires two years from the date of filing.

Approved:


MAR 2 0 2007
Date

Secretary

Establishment Date:   MAR 2 0 2007

Filing Date:   MAR 2 1 2007

2