**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND           )
ETHICS IN WASHINGTON,                     )
                                          )
Plaintiff,                                )
                                          )
v.                                        )          Civil No. 06-cv-2086-HHK
                                          )
MARGARET SPELLINGS, Secretary of          )
Education, *et al.*,                      )
                                          )
Defendants.                               )
⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

**INTRODUCTION**

This lawsuit stems from defendants' flagrant and continuing violations of the

Federal Advisory Committee Act ("FACA") that resulted in serious abuses in the

Reading First Initiative, part of the No Child Left Behind Act ("NCLBA"), as

documented in six different Department of Education ("DOE") Inspector General ("IG")

reports. Most relevant here, defendants ignored the statutory command that they use a

panel composed of individuals from a broad section of the educational community in

deciding how to allocate billions of dollars to states seeking to participate in the Reading

First Initiative.

In response to the IG Reports documenting defendants' many abuses, DOE

Secretary Margaret Spellings committed that the agency would implement all of the

reports' recommendations. Notwithstanding this commitment, Secretary Spellings and

DOE ignored CREW's[1] repeated requests for documents created and relied upon by the

---

[1] CREW is the acronym for plaintiff Citizens for Responsibility and Ethics in Washington.

illegal panel, a request authorized by the FACA. It was not until well after the filing of

the complaint here that DOE produced any documents CREW had requested, and that

production is still not complete.

Against this backdrop, defendants' latest motion to dismiss on mootness grounds

is a transparent attempt to avoid any accountability for their illegal actions. There remain

serious questions about whether and to what extent DOE has produced all of the

documents to which CREW is entitled under the law. Moreover, the flagrant and

continuing nature of defendants' violations provide more than an ample basis for the

declaratory relief that CREW has requested; CREW and the public should not have to

settle simply for DOE's hollow promise that it will not violate the law in the future.

Under these circumstances, this case is decidedly not moot and defendants' motion to

dismiss must therefore be denied.

## STATUTORY BACKGROUND

### The Federal Advisory Committee Act

The FACA imposes a number of requirements on committees that are established

or utilized by the president or federal agencies to obtain advice or recommendations

("advisory committees"). 5 U.S.C. App. §§ 2 et. seq. The FACA defines "advisory

committee" in relevant part to include any "committee, board, commission, council,

conference, panel, task force, or other similar group, or any subcommittee or other

subgroup thereof . . . which is (A) established by statute . . . or . . . (C) established or

utilized by one or more agencies, in the interest of obtaining advice or recommendations

for . . . one or more agencies or officers of the Federal Government." 5 U.S.C. App. §

3(2). Advisory committees that meet this definition are subject to the FACA's

requirements unless specifically exempted by statute, <u>id.</u> at § 4, or unless all of the committee members are full-time or permanent part-time government officers or employees.  <u>Id</u>. at § 3(2)(C)(i).

Before taking any action, each advisory committee subject to the FACA must file a charter setting forth the committee's objective, activities, and duties.  <u>Id.</u> at § 9(c)(2). In addition, the agency establishing an advisory committee must ensure "the advice and recommendations of the advisory committee will not be inappropriately influenced by the appointing authority or by any special interest, but will instead be the result of the advisory committee's independent judgment."  <u>Id.</u> at §§ 5(b)(3), 5(c).  Congress also mandated that membership in advisory committees be "fairly balanced in terms of the points of view represented and the functions to be performed by the advisory committee." <u>Id.</u> at § 5(b).

The FACA also requires advisory committees to provide advance notice of any meetings and open their meetings to the public, <u>id.</u> at § 10(a), unless the agency head determines that the meeting may be closed to the public in accordance with the Government in the Sunshine Act, 5 U.S.C. § 552(b)(c).  5 U.S.C. App. § 10(d).  All meetings must be chaired or attended by an officer or employee of the federal government authorized to adjourn any meeting when he or she deems adjournment in the public interest.  <u>Id.</u> at § 10(e).

In addition, under the FACA, advisory committees must make available for public inspection all "records, reports, transcripts, minutes, appendixes, working papers, drafts, studies, agenda, or other documents which were made available to or prepared for or by each advisory committee," to the extent they are not subject to one of the exemptions in

the Freedom of Information Act.  Id. at § 10(b); Food Chemical News v. U.S. Dep't of

Health and Human Services, 980 F.2d 1469, 1472-73 (D.C. Cir. 1992).  Advisory

committees must keep and disclose detailed meeting minutes for every meeting that

include "a record of the persons present, a complete and accurate description of the

matters discussed and conclusions reached, and copies of all reports received, issued, or

approved by the advisory committee," along with a signed certification of the minutes.  5

U.S.C. App. § 10(c).  If an advisory committee does not disclose all or part of the minutes

of any meeting, it must produce a written determination by the agency head that includes

reasons for the non-disclosure.  Id. at § 10(d).

## The Reading First Initiative

On January 8, 2002, through the No Child Left Behind Act, Congress enacted the

Reading First Initiative as an amendment to the Elementary and Secondary Education Act

of 1965, 20 U.S.C. §§ 7801 et seq. ("ESEA").  See 20 U.S.C. § 6362.  The purpose of the

initiative was "[t]o provide assistance to State educational agencies and local educational

agencies in establishing reading programs . . . that are based on scientifically based

reading research."  20 U.S.C. § 6361(1).

The legislation required the Secretary of the DOE to create a panel to evaluate

state Reading First grant proposals and recommend to the Secretary whether or not to

approve funding.  Id. at § 6363(c).  The statute specified that the panel was, "at a

minimum" to "include three individuals selected by the Secretary, three individuals

selected by NIFL [National Institute for Literacy], three individuals selected by the

National Research Council of the National Academy of Sciences and three individuals

selected by the National Institute of Child Health and Human Development."  Id.

In response, DOE established an expert review panel with the statutorily mandated composition, but then transferred the entire work of the panel to 16 subpanels of five panelists each.  Final Inspection Report of the Department of Education's Office of Inspector General, ED-OIG/113-F0017 (September 2006) ("Sept. 2006 IG Report") (attached as Exhibit A to Complaint).  The membership in the subpanels did not comport with the statutory requirements, nor was it guided by scientifically-based procedures as the ESEA requires.  Id. at 1-2.  Of the 16 subpanels, 15 had a majority of agency-selected panelists and seven were selected entirely by DOE.  Id. at 6.  Moreover, "[n]one of the subpanels included a representative from each of the nominating organizations . . ."  Id. In addition, the advisory panels made state grants without appropriate documentation, imposed evaluation criteria not included in the ESEA, and were composed and managed in contravention of Government Accountability Office management standards.  See generally Sept. 2006 IG Report.  And DOE did not have an effective conflict-of-interest screening process and failed to follow its own peer review guidance.  Id. at 1.

Based on concerns that the use of the subpanels would not comply with the statutory mandates, high-level DOED officials recommended that the agency create a 12-member Advisory and Oversight Panel, consisting of individuals selected by the four entities named in the statute, to examine the work of the subpanels.  Id. at 6.  This recommendation was ignored.  Id. at 6-7.

None of the Reading First advisory panels was conducted in compliance with the FACA.  Specifically, the membership of the panels was anything but "fairly balanced" and they were not conducted in compliance with the public disclosure and open meeting provisions of the FACA.  Moreover, DOE ignored CREW's multiple requests for

documents made prior to filing this lawsuit, Complaint at ¶¶ 27-28, despite Secretary

Spelling's public commitment to address and resolve the prior mistakes of the agency in

administering the Reading First Initiative.  Id. at ¶ 26.

## FACTUAL BACKGROUND

Plaintiff CREW is a non-profit corporation dedicated to "protecting the rights of

citizens to be informed about the activities of government officials and to ensuring the

integrity of government officials."  Complaint, ¶ 4.  In particular, CREW monitors

closely the laws and rules that apply to government agencies and pushes the U.S.

government to take ethics issues seriously.  Id., ¶ 5.  CREW relies, in part, on various

federal disclosure statutes such as the FACA and the Freedom of Information Act, 5

U.S.C. § 552 ("FOIA"), for documents to assist it in providing the public with

information concerning government decisions and the government decision making

process.  Id.¶ 4.

### CREW's FACA Request of November 6, 2006

On November 6, 2006, CREW sent a request pursuant to the FACA to DOE that

sought "all records of the proceedings of the expert review panels created to review state

grant applications submitted pursuant to the Reading First program of the No Child Left

Behind Act of 2001."  The request specifically sought the following records of any and

all advisory committees formed pursuant to the Reading First provisions of No Child Left

Behind:

> 1.  The Charter of all Reading First advisory committees, created pursuant to 5
> U.S.C. app. § 9(c)(2).
> 2.  Subject to the provisions of the Freedom of Information Act, 5 U.S.C. § 552,
> all "records, reports, transcripts, minutes, appendixes, working papers, drafts,
> studies, agenda or other documents which were made available to or prepared for
> or by each advisory committee," as mandated by 5 U.S.C. app. § 10(b).

3(a).  Detailed meeting minutes containing "a record of the persons present, a complete and accurate description of the matters discussed and conclusions reached, and copies of all reports received, issued or approved by the advisory committee," and a signed certification of the accuracy of the minutes, as mandated by 5 U.S.C. app. § 10(c).

(b).  If all or part of the minutes of any meeting are not disclosed under 5 U.S.C. app § 10(c), either a written determination by the President or Secretary of Education, including reasons for non-disclosure, must be produced pursuant to 5 U.S.C. app. § 10(d).

4.  Pursuant to 5 U.S.C. app. § 11, transcripts of any "agency proceedings" (defined by 5 U.S.C. § 551 as "rulemaking, adjudication, and licensing") that took place within the advisory committee(s).

Letter from Melanie Sloan to Margaret Spellings, Secretary, DOE, Nov. 6, 2006 (Exhibit G to Complaint).

Defendants ignored plaintiff's letter and on December 7, 2006, plaintiff filed the Complaint in this action.  On March 1, 2007, Defendants published a notice in the Federal Register that stated DOE's intention to establish a new panel under the Reading First Initiative that would be governed by the provisions of the FACA.  72 Fed. Reg. 9311.  Based in part on this notice, defendants filed a motion to stay these proceedings on March 14, 2007, arguing that the Secretary's notice in the Federal Register mooted all questions concerning the so-called "old panel." Defendants' Motion for a Stay of Proceedings and Memorandum in Support Thereof.  Defendants also represented that they would process and release four categories of documents concerning the "old panel" by June 29, 2007, and that this release would complete all of their obligations under the FACA.  Id.

This Court ultimately accepted defendants' motion for a stay of proceedings and ordered the parties to file a joint status report.  To facilitate preparation of the report, plaintiff contacted defendants and outlined the issues still pending and the categories of documents plaintiff seeks.  They include the following:

> Category a (Reading First Application package-material from the
> Department of Education); category i (conflict of interest screening
> forms); category j (notes of conference calls); category 1 (all records of
> the meetings in which these forms and others like them were evaluated
> and discussed by Reading First panels); category 2 (and documentation
> reflecting informal criteria used at any level of Reading First panels to
> evaluate reading programs or making funding decisions); category 3 (any
> additional comments of individual panelists regarding state funding
> applications, including suggested clarifications or changes to those
> applications); and category 4 (any additional funding recommendations
> from panels and panelists not included in the documents DOE has already
> agreed to provide).

Letter from Scott A. Hodes to David Glass, at 1-2, July 27, 2007 (Attached herein as

Exhibit A).  Plaintiff also sought assurances that it had received "all documents that were

made available to or prepared for or by" the subpanels as well as "working papers, drafts,

studies . . . or other documents which were made available to or prepared for or by each

advisory committee . . ." as provided for at 5 U.S.C. App. § 10(b).  Id.

Plaintiff additionally sought "an express commitment that any subpanels to be

established under the Reading First program will comply with the FACA" as well as

"what the Department of Education plans to do in its review of the three year progress

reports."  Id. at 2.

In their response of August 8, 2007, defendants claimed:  "[t]he Department has

released all Reading First Application package-materials in its possession (Category a).

The Department does not possess conflict of interest screening forms (category i), but

internal forms that contain conflict of interest questions.  The Department does not

believe FACA requires release of these forms.  Finally, the Department does not possess

any records identified in categories 1 through 4."  Letter from John R. Coleman to Scott

A. Hodes at 2, August 8, 2007 (attached herein as Exhibit B).  As to future commitments

of compliance with FACA, DOE stated only "to the extent FACA applies to the

subpanels formed by the committee, the Department will comply with FACA requirements." Id.

The joint status report, submitted on August 10, 2007, reflects the fact that while over 62,000 pages of material have been released to the plaintiff, the parties still have not resolved all of the issues presented in this litigation. Joint Status Report (August 10, 2007), pp. 1, 2

Defendants have now moved to dismiss, arguing that because they have produced all documents plaintiff requested and because they are complying with the FACA as to the new panel, this case is moot.

## ARGUMENT

### I.    DEFENDANTS' PAST VIOLATIONS OF FACA PRESENT A LIVE ISSUE.

Defendants argue that because they have now disbanded the "old panel" under the Reading First Initiative and established a "new panel" under the provisions of FACA, the issue of their past violations of FACA is now moot. Memorandum in Support of Defendants' Motion to Dismiss ("Ds' Mem.") at 12-13. Defendants' eleventh-hour decision to finally comply with the law is not enough to moot the questions concerning their past actions of completely ignoring the requirements of FACA in their administration of the Reading First Initiative.

As an initial matter, notwithstanding the unequivocal record on this issue, defendants have never publicly and officially acknowledged that they violated FACA in establishing and utilizing the "old panel" to evaluate Reading First grant applications from the states. In fact, defendants have never filed an answer to these allegations made in the Complaint in this lawsuit, and their latest motion to dismiss appears designed to

avoid any public accountability for their illegal actions. This ongoing recalcitrance coupled with the flagrant nature of the defendants' past violations illustrates the need for declaratory relief here.

Under similar circumstances, the courts have recognized that the termination of a committee does not eliminate issues under the FACA concerning the government's failure to follow FACA in the past and the harm done to the plaintiff by this failure. See, e.g., Byrd v. EPA, 174 F.2d 239, 244-45 (D.C. Cir. 1999) (claim for declaratory relief not mooted by termination of FACA committee); Physician's Committee for Responsible Medicine v. Glickman, 117 F.Supp.2d 1, 4-5 (D.D.C. 2000) (case not moot when declaratory judgment sought regarding terminated FACA panel). Here, even if defendants' recent actions concerning the so-called "new panel" are construed as evidence that the old panel is no longer active, the question of defendants' failure to previously follow the FACA, for which plaintiff is seeking a declaratory judgment, and the harm done to plaintiff (and the public) by this omission remain live questions.

As the FACA case law makes clear, defendants' recent actions do not moot this case. The cases defendants cite in support of their argument that the termination of the "old panel" moots questions concerning their past violation of the FACA are inapposite as none involves allegations of FACA violations. For example, Clarke v. United States, 915 F.2d 699, 705 (D.C. Cir. 1990) (en banc), cited by defendants, dealt with a challenge to a federal statute that had expired. The other cases on which defendants rely involved challenges to government rules that were mooted by the government's amendment of those rules before a court could rule on their legality. See Am. Bankers Ass'n v. Nat'l Credit Union Admin., 271 F. 3d 262, 274 (D.C. Cir. 2001);

Nat'l Mining Ass'n v. United States Dep't of Interior, 251 F.3d 1007, 1011 (D.C. Cir. 2001); Ariz. Pub. Serv. Co. v. EPA, 211 F.3d 1280, 1295-96 (D.C. Cir. 2000).

In sum, plaintiff's request for a declaratory judgment to redress defendants' past violations of the FACA remains a live issue to be addressed by the Court. Indeed, the need for this type of relief is especially acute here given defendants' persistent refusal to admit their past violations of law and their ongoing refusal to commit that they will not create subpanels to do the substantive work of the new panel in violation of the FACA, as they did with respect to the old panel.

## II.    DEFENDANTS HAVE NOT ESTABLISHED THAT THEY HAVE LOCATED AND PRODUCED ALL RESPONSIVE DOCUMENTS.

Defendants' motion to dismiss also rests on their assertion that the release of approximately 62,000 pages of documents completely moots plaintiff's request for all information concerning the Reading First panels. In support of this argument, defendants attach the Second Declaration of James Butler ("Second Butler Decl.") in which, in a cursory fashion, he states that the 62,000 pages of documents that defendants released "are all of the documents in the Department's possession that were made available to or prepared for or by the panels that reviewed the Reading First Initiative." Second Butler Decl., ¶¶ 5, 6. This declaration, however, fails to establish that all responsive documents were indeed searched for and released to plaintiff. Neither of Mr. Butler's declarations submitted in this matter describes defendants' search for responsive records and neither provides a basis for the plaintiff or this Court to conclude that all of the responsive records were located and released to plaintiff.

Where, as here, an agency does not release records at the time of their creation, as FACA requires, the agency's subsequent search is analogous to a FOIA search. See

generally Food Chemical News v. Dep't of Health and Human Servs., 980 F.2d 1468,

1472 (D.C. Cir. 1992). The federal courts have consistently held that in order to meet its

burden that it has complied with its search obligation under the FOIA, an "agency must

demonstrate that it has conducted a 'search reasonably calculated to uncover all relevant

documents.'" Weisberg v. U.S. Department of Justice, 745 F.2d 1476, 1485 (D.C. Cir.

1984)(quoting Weisberg v. Department of Justice, 705 F.2d 1344, 1350-51 (D.C. Cir.

1983). To fulfill its obligation under the FOIA, an agency must demonstrate "beyond

material doubt" that its search was "reasonably calculated to uncover all relevant

documents." Valencia-Lucena v. United States Coast Guard, 180 F.3d 321, 325 (D.C.

Cir. 1999). In the current case, defendants have failed to establish that their search for

responsive records was adequate.

  The declaration defendants have proffered does not describe in any way DOE's

search for documents. Instead, Mr. Butler merely attests that to his "best knowledge,

information and belief" the documents provided to date "are all of the documents in the

Department's possession that were made available or prepared for or by the panels that

reviewed the Reading First application." Second Butler Decl. ¶ 5. Mr. Butler further

states that to the best of his "knowledge, information and belief, the Department

possesses no additional documents that were made available to or prepared for or by the

panels that reviewed the Reading First applications." Id., ¶ 7.

  Defendants do not, however, describe in any way what the agency's search

entailed. For example, Mr. Butler does not describe where he looked beyond his general

assertion that the documents produced were from DOE's "Reading First program office."

Id., ¶ 4. The mere fact that some unidentified individual or individuals within DOE went

through some paper files maintained in the Reading First Program office does not, in and of itself, establish that the agency conducted an adequate search.  In short, DOE's bald description, absent any detail of what was put in that office, what specific files within that office were searched and why that office is the only potential repository for documents, is patently deficient.  In the absence of these critical facts, there is no basis to conclude that the defendants' search was adequate

Nor do defendants describe how the Reading First records are or were maintained or what instructions concerning the records were given to Reading First panel members[2] at the time the panels were created in 2001.  Further, defendants have not established that they have contacted any of the Reading First panel members to see if they retained any records that belonged to the FACA committee.

In a highly analogous case to the one at hand, the government was required to search for electronic records and contact past committee members of the terminated FACA committee in response to a request for FACA committee records.  Association of American Physicians v. Clinton, 879 F. Supp. 103 (D.D.C. 1994), rev'd on other grounds, 187 F.3d 655 (D.C. Cir. 1999).  That court found that even though documents had been produced, the failure to produce any electronic records meant the case was not moot.  Id. at 105.  Furthermore, the court only found that the government had met its search burden on the paper documents when it had established that it had contacted 630 individuals who had actively participated in the working group.  Id. at 106-07.  Defendants in the present case have not established any of these facts essential to ascertaining the adequacy of their search.

---

[2] If these notes and other material created by Reading First panel members were maintained and located by defendants, they would be disclosable pursuant to FACA § 10(b).

In addition, defendants have failed to account for a number of categories of documents plaintiff has requested, providing further evidence of the inadequacy of their search. For example, plaintiff seeks conflict of interest forms filled out by FACA panel members as part of their service on the Reading First panels. Defendants' filing is silent on whether these documents were searched for, were located, or alternatively why the FACA does not require them to produce such documents even though DOE has referenced these documents in the past. See Letter from John R. Coleman to Scott A. Hodes at 2, August 8, 2007.

Additional categories of requested documents that defendants have yet to produce or otherwise account for include (1) documentation reflecting informal criteria actually used at any level of the Reading First panels to evaluate reading programs or make funding decisions; (2) comments of individual panelists regarding applications, including suggested clarifications or changes to those applications, beyond what is on individual panelists review forms and panel summary forms; (3) drafts of all items in the state application packages including applications, Reading First criteria and Reading First guidance; and (4) all records and notes of meetings of the Reading First panelists, including notes of individual panelists.

The glaring deficiencies in the agency declaration together with the numerous missing or unaccounted-for categories of documents make clear that far from moot, the adequacy of defendants' document search is very much at issue. Defendants have failed to demonstrate that they conducted an adequate search reasonably calculated to uncover all responsive documents. Moreover, the burden they carry here is considerable, given

their past conduct which reflects a purposeful effort to place their implementation of the

Reading First Initiative beyond public view and accountability.

The outstanding factual issues concerning the adequacy of the defendants' search

also highlight why this case is not susceptible to a motion to dismiss.  Defendants can

only carry their burden through the introduction of considerably more facts than are

currently in the record, and the vehicle of a motion to dismiss pursuant to Rule 12 of the

Federal Rules of Civil Procedure is therefore not available to them.

### <u>Conclusion</u>

For the reasons set forth above, active issues remain in this matter and are not

mooted by the actions of the defendant.  Plaintiff therefore requests that defendants'

motion to dismiss be denied and that defendants be ordered to immediately file an answer

to the complaint.

Respectfully submitted,

_____/s/_____

Scott A. Hodes (D.C. Bar No. 430375)
Scott A. Hodes, Attorney at Law
P.O. Box 42002
Washington, D.C.  20015
Phone (301) 404-0502
Fax (413) 641-2833

_____/s/_____

Anne L. Weisman (D.C. Bar No. 298190)
Melanie Sloan (D.C. Bar No. 434584)
Citizens for Responsibility
And Ethics in Washington
1400 Eye Street, N.W.
Suite 450
Washington, D.C.  20005
Phone (202) 408-5565
Fax (202) 566-5020

Attorneys for Plaintiff

Dated:  October 12, 2007

# CITIZENS FOR ETHICS AND RESPONSIBILITY IN WASHINGTON

# V.

# SPELLINGS, ET AL.

# 06-cv-2086 (HHK)

# EXHIBIT A

SCOTT A. HODES, ATTORNEY AT LAW
POST OFFICE BOX 42002
WASHINGTON, DC 20015
WWW.INFOPRIVACYLAW.COM

MEMBER DC AND MD BARS

(301) 404-0502

INFOPRIVACYLAW@YAHOO.COM

July 27, 2007

Mr. David M. Glass, Esq.
U.S. Department of Justice
20 Massachusetts Ave, N.W.
Room 7200
Washington, D.C. 20530
David.Glass@usdoj.gov

Via First Class mail and e-mail

Re:  CREW v. U.S. Dep't of Education, Case No. 06-2096 (H.H.K.)

Dear David:

I write concerning the joint status report and briefing schedule that is due pursuant to
Judge Kennedy's Order of July 26, 2007.  Thus, I bring to your attention issues that
CREW believes merit attention and should be addressed in the joint status report.

While we appreciate the approximately 62,000 pages that were recently released by
the Department of Education, there are some issues with the quality of some of the
released documents and the redactions made to the documents.  Initially, the quality
of CD1 is poor.  Many of the documents are illegible and were produced completely
out of order.  Thus, we ask that the Department of Education reproduce these
documents in a legible and orderly form.

Next, we contest many of the redactions taken pursuant to FOIA Exemption 6 by the
Department of Education.  While we accept redacting home addresses and home
phone numbers for individuals on the individual state applications, those are the only
redactions we do not contest.  The Department of Education redacted large blocks of
information, and in some cases entire pages of material, concerning the backgrounds
and resumes of individuals on the state applications.  We ask that this information be
reprocessed and released with only home address and home phone numbers
redacted.  Additionally, the names and signatures of many of the panel members
were withheld on the Panel Chair Summary Form and Technical Review Forms.  As
the names of FACA members are supposed to be public information, we would like
this information to be reprocessed as well.

Finally as to the document release, we need some assurance that these are all the
documents responsive to our letter to the Department of Education dated November
6, 2006, seeking the FACA documents.  CREW's letter of March 6, 2007 specifically
asked for various categories of documents.  While many of those categories of

documents were released, it appears that many of them were not provided. These documents include the following categories of the March 6, 2007 letter: Category a (Reading First Application package-material from the Department of Education); category i (conflict of interest screening forms); category j (notes of conference calls); category 1 (all records of the meetings in which these forms and others like them were evaluated and discussed by Reading First panels); category 2 (and documentation reflecting informal criteria used at any level of Reading First panels to evaluate reading programs or making funding decisions); category 3 (any additional comments of individual panelists regarding state funding applications, including suggested clarifications or changes to those applications); and category 4 (any additional funding recommendations from panels and panelists not included in the documents DOE has already agreed to provide). Thus, we need to know that we received all "documents which were made available to or prepared for or by" the 16 subpanels, as well as "working papers, drafts, studies . . . or other documents which were made available to or prepared for or by each advisory committee . . ." 5 U.S.C. App. § 10(b).

Next, we need an express commitment that any subpanels to be established under the Reading First program will comply with the FACA. Additionally, we also want to know what the Department of Education plans to do in its review of the three year progress reports.

If you have any other questions concerning this matter, feel free to contact me at your convenience.

Sincerely,

Scott A. Hodes

CITIZENS FOR ETHICS AND
RESPONSIBILITY IN WASHINGTON

V.

SPELLINGS, ET AL.

06-cv-2086 (HHK)

# EXHIBIT B



**U.S. Department of Justice**
Civil Division
Federal Programs Branch
20 Massachusetts Ave., NW
Room 7328
Washington, DC 20530

John R. Coleman
Trial Attorney

Tel: 202-514-4505 — Fax: 202-616-8460
Email: john.coleman3@usdoj.gov

August 8, 2007

Via First Class Mail & Facsimile

Scott A. Hodes
P.O. Box 42002
Washington, D.C. 20015
infoprivacylaw@yahoo.com

Re:    *CREW v. Spellings*, No. 1:06-cv-02086-HHK (D.D.C.)

Dear Scott:

I write in response to your letter to my colleague David Glass, dated July 30, 2007, regarding the joint status report and briefing schedule for the above-referenced case. For the reasons set forth below, we believe this case no longer presents a live controversy. Accordingly, if we are unable to reach an agreement to stipulate to dismissal of the case, we propose setting a briefing schedule for a motion to dismiss on the ground that the case is moot.

As you acknowledge in your letter, the Department of Education ("Department") recently produced 27 compact disks containing approximately 62,000 pages of documents regarding the Reading First program. These documents comprise the entirety of the documents within the Department's possession, that are responsive to the request contained in the Complaint, and not exempt under 5 U.S.C. § 552(b).

In addition, on March 1, 2007, the Department announced the establishment of the Reading First Advisory Committee ("Committee"), which is charged with reviewing the last remaining Reading First application and the third-year progress reports submitted by States under the Reading First program. *See* 72 Fed. Reg. 9,311 (March 1, 2007). The Department confirmed that the activities of the Committee will be governed by the Federal Advisory Committee Act ("FACA"). *See id.* The Committee's charter was approved by Secretary Spellings on March 20, 2007.

By notice published Thursday, August 2, 2007, the Department informed the public that the first open meeting of the Committee would be held in Washington D.C. on August 20 and 22.

*See* 72 Fed. Reg. 42,403 (Aug. 2, 2007). At the meeting, Committee members (1) will be sworn in; (2) will discuss the purpose and responsibilities of the Committee; (3) will select a Committee Chair; (4) will develop procedures for completing the tasks described in its charter; and (5) will plan future meetings. *Id.* In addition, to the extent practicable, the Committee will begin work described in its charter. *Id.*

In your letter, you identify several items you believe should be addressed in the joint status report now due August 10, 2007.

First, you claim that some of the documents contained on CD 1 are illegible and that some of the documents are produced out of proper sequence. You request that the Department reproduce these documents in legible form and in proper sequence. At your suggestion, I reviewed the portions of CD 1 posted on your website (http://www.citizensforethics.org/node/2 9233). I did not notice any illegible documents. Portions of some of the original documents have evidently been highlighted, affecting the quality of the photocopy of those portions, but not rendering those portions entirely illegible. Likewise, I found the portions of CD 1 posted to your website to be largely in the correct sequence.

The documents contained on CD 1 were produced as they are kept by the Department, and at considerable expense. As you must be aware, FACA only requires that the records of an advisory committee "be available for public inspection and copying." FACA § 10(b). The Department believes that, by providing CDs containing approximately 62,000 pages of documents as they are kept by the Department, at no expense to plaintiff, it has already exceeded the requirements of the statute, and therefore will not comply with this request.

Second, you contest many of the redactions of individuals' personal information contained on resumes submitted with state applications. The Department believes that all of these redactions relate solely to personal information, including but not limited to, information about marital status, family background and religious affiliations, and are therefore properly redacted pursuant to Exemption 6 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(6). However, if you can identify specific instances (by CD and approximate page number) of entire resumes that have been redacted, the Department has agreed to review the redactions.

Third, you contest the redaction of the names and signatures of the panel members on the Panel Chair Summary Form and Technical Review Forms. The Department has agreed to provide a list of names of all of the panel members, but believes that releasing the names and/or signatures contained on the Panel Chair Summary Form and Technical Review Forms would significantly compromise the ability of the Department to receive the frank advice of those who serve on peer review panels, and hamper the ability of the Department to recruit well-qualified advisory committee members in the future. The Department therefore believes that the signatures are properly redacted pursuant to Exemption 5 of the FOIA, which is incorporated by FACA § 10(b).

Fourth, you seek to confirm that the Department of Education has released certain categories of records. The Department's response to each of these categories is as follows:

The Department has released all Reading First Application package-materials in its possession (Category a). The Department does not possess conflict of interest screening forms (category i), but internal forms that contain conflict of interest questions. The Department does not believe FACA requires release of these forms. Finally, the Department does not possess any records identified in categories 1 through 4.

Fifth, you seek an "express commitment that any subpanels to be established under the Reading First program will comply with the FACA." The Committee has not yet met to "develop procedures for completing the tasks described in its charter," 72 Fed. Reg. 42,403, and therefore has not yet determined whether to form subpanels. However, the March 1, 2007 Notice specifically stated that "[t]he activities of the [Committee] will be governed by FACA." 72 Fed. Reg. 9,311. Thus, to the extent the FACA applies to subpanels formed by the Committee, the Department will comply with FACA's requirements.

Finally, you have asked "what the Department of Education plans to do in its review of the three year progress reports." The Committee is tasked with review of the third-year progress reports, and therefore, we would expect that the Committee will determine how to conduct the review at the Committee's meeting.

In summary, the Department believes that through its release of approximately 62,000 pages of documents relating to the Reading First program, as well as the establishment of the Committee, it has resolved all issues raised by this lawsuit. Accordingly, if the parties cannot agree to dismissal of the case, we propose setting a briefing schedule to address the continuing jurisdiction of the Court.

Please contact me after you have received this letter to discuss these issues, and the joint status report.

Cordially,

John R. Coleman
Trial Attorney

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CITIZENS FOR RESPONSIBILITY AND　　)
ETHICS IN WASHINGTON,　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
Plaintiff,　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　　)　　　Civil No. 06-cv-2086-HHK
　　　　　　　　　　　　　　　　　　　　)
MARGARET SPELLINGS, Secretary of　　)
Education, *et al.*,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
Defendants.　　　　　　　　　　　　　　)
_____)

**ORDER**

The Court having considered defendants' motion to dismiss, plaintiff's opposition

thereto and the entire record herein, it is hereby

ORDERED that defendants' motion is denied and it is further

ORDERED that defendants are to answer the complaint and complete a further

search for responsive records in this matter within thirty days of this date.

DATED_____　　　　　　_____
　　　　　　　　　　　　　　　　　　　HENRY H. KENNEDY JR.
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE