UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>MARGARET SPELLINGS, Secretary of Education, *et al.*,<br><br>　　　　　　　　　　Defendants. | No. 1:06-cv-02086-HHK |

## DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS

### INTRODUCTION

　　　　Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss fails to identify a continuing, redressable injury that can support this Court's jurisdiction under Article III of the Constitution.

　　　　In its opposition memorandum plaintiff makes two arguments in an unsuccessful effort to persuade this Court that a continuing controversy exists. First, plaintiff contends that defendants' alleged past violations of FACA with respect to the Old Panel present a live, continuing issue simply because "defendants have never publicly and officially acknowledged that they have violated FACA in establishing and utilizing the 'old panel' . . . ." Pl. Mem. Opp. at 9. This contention falls short of the mark, however, because as defendants have pointed out previously any past FACA violations with respect to the Old Panel have been rectified by the production of defendants' FACA records. Moreover, as established below, because plaintiff did not attempt to participate in the Old Panel's evaluations of state grant applications, its claimed injury does not relate to the timing of the production of these records but only to the question of

whether they have been produced. Therefore, it no longer has a viable claim since these records undeniably have been produced. Nor is there any case or controversy based on a threat of future FACA violations, because plaintiff has not alleged (nor could it) that the Department has a policy of non-compliance with FACA.

Second, in the face of three comprehensive declarations from James Butler, plaintiff continues to maintain that, "There remain serious questions about whether and to what extent DOE has produced all of the documents to which CREW is entitled under the law." Pl. Mem. Opp. at 2. This stubborn insistence that more documents must exist is mere speculation and without any factual basis. Further, plaintiff's claim that defendants must reach out to former panelists to be certain that a thorough search for records has been conducted is utterly without legal support. Because plaintiff's arguments cannot support this Court's continuing jurisdiction, this case must be dismissed as moot.

## ARGUMENT

A.    <u>Plaintiff Cannot Satisfy the Case or Controversy Requirement of Article III</u>

Plaintiff's request for declaratory relief regarding defendants' alleged noncompliance with the FACA, like all requests for declaratory relief, must satisfy Article III's case-or-controversy requirement. *See Medimmune, Inc. v. Genetech, Inc.*, — U.S. —, 127 S.Ct. 764, 771 (2007). To determine "whether a request for declaratory relief ha[s] become moot, . . . 'the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Prieser v. Newkirk*, 422 U.S. 395, 402 (1975) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273

(1941)). Although plaintiff repeatedly asserts that defendants' alleged violations of FACA are "flagrant and continuing," plaintiff fails to identify any actions since the operation of the Old Panel in 2002 and 2003 that allegedly violate the FACA. Indeed, aside from plaintiff's unfounded speculation regarding the existence of additional records subject to FACA's disclosure requirements, Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss fails to identify any controversy between the parties, and therefore must be dismissed as moot.

Plaintiff does not contend that it unsuccessfully attempted to participate in the Old Panel's evaluation of state grant applications, or that its interests were at stake in the Old Panel's review. Rather, plaintiff's claimed standing is based on the so-called "informational injury" that arises when an agency refuses to permit any member of the public to "scrutinize [an alleged advisory committee's] activities to the extent FACA allows. . . ." *Public Citizen v. United States Dep't of Justice*, 491 U.S. 438, 449 (1989); *see also Cummock v. Gore*, 180 F.3d 282, 290 (D.C. Cir. 1999) ("[Plaintiff] suffered an injury under FACA insofar as the Commission denied her requests for information that it was required to produce."); *Byrd v. EPA*, 174 F.3d 239, 243 (D.C. Cir. 1999) ("By denying [plaintiff] timely access to the panel's written comments and pre-meeting notes, EPA directly caused [plaintiff's] informational injury."). This theory of "informational injury" is derived from cases upholding standing in Freedom of Information Act (FOIA) cases. *Public Citizen*, 491 U.S. at 449 (citing cases). It follows that an "informational injury" becomes moot in a FACA case in the same way that it becomes moot in a FOIA case.

Thus, although plaintiff's alleged "informational injury" may have satisfied Article III's standing requirement at the outset of this litigation, the production of all documents that were

made available to or prepared for or by the Old Panel, and the Department's strict observance of FACA's open meeting and disclosure requirements in its operation of the New Panel, has indisputably redressed any "informational injury" that plaintiff may have once suffered. Therefore, the issuance of a declaratory judgment would not resolve a substantial controversy between parties with adverse legal interests, but would constitute an advisory opinion in violation of Article III. *See Boyd v. Criminal Div. of U.S. Dep't of Justice*, 475 F.3d 381, 385 n.1 (D.C. Cir. 2007) (release of documents moots challenge to withholding); *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 841 (D.C. Cir. 2001) (holding that "pre-argument transmittal of all documents responsive to [FOIA] request moots the litigation over the merits of that category."); *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Crooker v. U.S. State Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980).

Courts have recognized that when an agency produces FACA § 10(b) records and otherwise complies with FACA, there is simply no dispute left to resolve. For example, in *Ass'n of Am. Physicians and Surgeons, Inc. v. Clinton*, 879 F. Supp. 103 (D.D.C. 1994), the district court rejected "[p]laintiff's suggestion that a declaratory judgment might be appropriate even if the working group has been terminated and all appropriate working group documents have been publicly released," and held that "[a]t that point, there will simply be no continuing case or controversy for judicial resolution." *Id.* at 106; *see also Ass'n of Am. Physicians and Surgeons, Inc. v. Clinton*, 879 F. Supp. 106, 107 (D.D.C. 1994) (dismissing same case as moot after records of alleged advisory committee were made publicly available).

Plaintiff's reliance on *Byrd v. EPA*, 174 F.2d 239 (D.C. Cir. 1999), and its progeny is misplaced, as these cases involved plaintiffs who had been injured by the *timing* of the agency's

production of alleged advisory committee records. Plaintiff, who requested the records relating to the Old Panel long after it had completed its work and received these records prior to the first meeting of the New Panel, cannot claim a similar injury.

In *Byrd*, the Environmental Protection Agency (EPA) had instructed an outside contractor to assemble a panel of experts to assist the EPA in updating a report on the carcinogenic effects of benzene (the Benzene Update). *Id.* at 241. In preparation for a public meeting of the panel, the EPA asked the panelists to provide it with written responses to specific questions regarding the draft Benzene Update. *Id.* at 241. Prior to the meeting, plaintiff Byrd, "a self-employed consulting toxicologist and risk assessor," unsuccessfully sought the panelists' pre-meeting notes. *Id.* at 242. Byrd participated in the public meeting, and "submitted written comments to the EPA on the draft Benzene Update," but did so without the benefit of the pre-meeting notes. *Id.* at 242-44. Byrd brought suit against the EPA pursuant to FACA. *Id.* at 242. The EPA then moved to dismiss his FACA claims, in part, on grounds of mootness because he had received the pre-meeting notes in response to a FOIA request while the suit was pending.[1]

The United States Court of Appeals for the District of Columbia affirmed the general rule that a plaintiff whose standing is based on an "informational injury" – normally the denial of a request for records – could no longer satisfy Article III's standing requirement when the records have been produced: "If Byrd had simply complained that EPA failed to release the documents he requested, his alleged injury could not be redressed by any action of this Court because he

---

[1]The district court had "assumed without deciding" Byrd's standing and dismissed the case on the ground that the panel of experts was not an "advisory committee" subject to FACA. *Id.* at 243. Although the Court of Appeals affirmed dismissal on the same ground, it did so only after establishing its jurisdiction to hear the appeal, as required by the Supreme Court's decision in *Steel Co. v. Citizens for a Better Envt.*, 523 U.S. 83 (1998). *Id.*

ultimately received the materials." *Id.* at 244. Byrd's injury, however, was not simply the refusal of his request for the pre-meeting notes, but "EPA's failure to furnish him with the documents until long after they would have been of any use to him." *Id.* Because Byrd's injury was his inability to review the panel's pre-meeting notes in time to attack the panel's findings at the panel's public meeting or in his comments, the Court of Appeals reasoned that a declaratory judgment would help to redress this injury by giving "Byrd 'ammunition for his attack on the [panel's] findings' in subsequent agency proceedings that make use of the Benzene Update." *Id.*

This "highly theoretical injury," *id.* at 249 (Williams, J., concurring in part and dissenting in part), has no application to the facts of this case. Most obviously, plaintiff did not request any records of the Old Panel until well after the work of the Old Panel was complete and the grants to states distributed. *Compare* Ex. G to Compl. (Nov. 6, 2006 letter from plaintiff requesting records) *with* Ex. B to Compl. (May 13, 2002 press release announcing selection of panelists); Ex. D to Compl. ("The abuses described in the [Inspector General's] report occurred during 2002 and 2003, when Rod Paige was education secretary."). Because plaintiff did not seek records in order to influence the work of the Old Panel, but sought records only after the work of the Old Panel had been completed, plaintiff can claim no injury related to the timing of its receipt of the records.

The other critical distinction with *Byrd*, which likewise serves to moot plaintiff's case, is the fact that since plaintiff filed its complaint, the Department of Education has formed the New Panel. The New Panel is governed by the FACA, and has complied with all of FACA's requirements. *See* Reading First Advisory Committee; Notice of Establishment, 72 Fed. Reg. 9,311 (Mar. 1, 2007) ("The activities of the panel . . . will be governed by FACA.") The New

Panel is performing the work that would otherwise have been performed by the Old Panel, including reviewing the third-year progress reports of the SEA's to recommend whether to continue funding the State Reading First programs. *See id.*; *see also* 20 U.S.C. § 6362(e) (directing that third-year progress reports be reviewed by expert panel). Its meetings are open to the public, and its records are available to the public for inspection and photocopying.[2] This is precisely the situation the Court of Appeals in *Bryd* described as an example of when a FACA case would be moot: "[Byrd's] injury would be mooted if EPA convened another panel to review the Benzene Update in compliance with FACA and provided him with all panel documents either before or at the meeting." *Byrd*, 174 F.3d at 244.

Finally, unlike in *Byrd*, plaintiff has not alleged that DOED has a policy of failing to comply with FACA,[3] but has complained only of DOED's alleged failure to comply with FACA in its operation of the Old Panel,[4] an alleged failure that has now clearly been rectified. *See* 72 Fed. Reg. 9,311 (Mar. 1, 2007). Thus, plaintiff cannot satisfy the case-or-controversy requirement on the basis of the threat of a future injury from any alleged policy of non-compliance with FACA. *See Byrd*, 174 F.3d at 248 (Williams J., concurring in part and

---

[2]*See, e.g.,* Reading First Advisory Committee; Notice of Open Meeting, 72 Fed. Reg. 42,403 (Aug. 2, 2007) (informing the public of the time, location, and agenda of the New Panel's first meeting, and the location at which the public can inspect and copy records of the New Panel); Reading First Advisory Committee; Notice of Meeting, 72 Fed. Reg. 51,629 (Sept. 10, 2007) (same for second meeting); Reading First Advisory Committee; Notice of Open Meeting, 72 Fed. Reg. 55,191 (Sept. 28, 2007) (same for third meeting).

[3]*See Byrd*, 174 F.3d at 244 ("Byrd also argues that EPA has a policy of hiring contractors to conduct peer reviews without following FACA requirements.")*; id.* at 248 (Williams, J., concurring in part and dissenting in part) ("Jurisdiction rests, I think, entirely on EPA's policy of using contractors to do peer reviews of risk assessments under arrangements like those involved in the Benzene Update that triggered this suit.").

[4]*See* Complaint ¶¶ 35, 38, 41.

7

dissenting in part) ("Because Byrd is a regular participant in risk assessment panels, the threat of future injury from the policy is likely and imminent enough to justify standing."); *see also Food Chem. News v. Dep't of Health and Human Serv.*, 980 F.2d 1468, 1470 n.3 (D.C. Cir. 1993) (FACA case not moot only because plaintiff's challenged "alleged *policy* governing access to advisory committee materials.").

Plaintiff also cites *Physicians Comm. for Responsible Medicine v. Glickman*, 117 F. Supp. 2d 1 (D.D.C. 2000), but that case is inapposite for the same reasons. In *Glickman* plaintiffs sought a declaration that the appointment and operation of the Dietary Guidelines Advisory Committee for Year 2000, which had been assembled to assist in revision of the Dietary Guidelines, had violated FACA. *Id.* at 2-3. As in *Byrd*, plaintiffs had sought, but not received, records of the alleged advisory committee while it was meeting, only to receive all the records after the after the alleged advisory committee had stopped meeting. *Id.* at 3. And, as in *Byrd*, plaintiffs sought a declaratory judgment to "provide them 'valuable ammunition for publicly questioning the final Dietary Guidelines." *Id.* at 4. The district court noted the tension between the holding in *Byrd* and both *Payne Enter., Inc. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) ("A declaration that an agency's initial refusal to disclose requested information was unlawful, after the agency made that information available, would constitute an advisory opinion in contravention of Article III of the Constitution."), and *Hill v. U.S. Air Force*, 795 F.2d 1067, 1069 (D.C. Cir. 1986) (receipt of requested records moots FOIA claim), but held, on the basis of *Byrd*, that the claim was not moot. *Id.* at 5. Because plaintiff cannot (and has not) claimed any injury relating to the *timing* of defendants' production of FACA records, and because plaintiff does not purport to need declaratory judgment to challenge the Old Panel's

8

recommendations, plaintiff does not suffer the same injury that supported jurisdiction in *Glickman*. Accordingly, because defendant no longer suffers from any legally cognizable injury, any declaration regarding defendants' alleged violation of FACA would be an advisory opinion.

        B.        <u>Defendant Has Produced All Records That Would Be Subject to FACA § 10(b)</u>

Plaintiff's opposition to defendants' motion to dismiss ultimately boils down to plaintiff's challenge to the sufficiency of defendants' search for records that would be subject to FACA § 10(b)'s disclosure requirement if the Old Panel were a FACA advisory committee. FACA § 10(b) requires that all records "made available to or prepared for or by each advisory committee shall be available for public inspection and copying. . . ." Analogizing to FOIA, plaintiff claims that DOED "must demonstrate that it has conducted a search 'reasonably calculated to uncover all relevant documents.'" *See Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984). The defendants' search for records easily satisfies this standard. As described in the declarations of James Butler, which "are accorded a presumption of good faith," the officials currently administering the Reading First program have conducted a thorough search for any records "made available to or prepared for or by" the Old Panel, and produced those records to plaintiff. *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir.1991). Plaintiff's "'purely speculative claims about the existence and discoverability of other documents'" cannot rebut these declarations, or serve to create a live controversy where none exists. *Id.* (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C.Cir.1981)).

The Reading First program was formerly administered by individuals who are no longer with DOED. Third Butler Decl. ¶ 3. Before these individuals left in September 2006, they advised officials within the Academic Improvement and Teacher Quality Programs (AITQP)

9

Division of DOED's Office of Elementary and Secondary Education, who are currently charged with administering the Reading First program, of the location of the Reading First program files. *Id.* In the course of responding to Inspector General audits and other requests for records in the ensuing thirteen months, AITQP officials "have had several occasions to search and become familiar with the materials in the Reading First program files." *Id.* ¶ 4. These "searches have included a thorough review of every file drawer in every cabinet known to contain the Reading First program files." *Id.* Based on these searches, AITQP officials identified all of the documents in DOED's possession that would have been subject to the disclosure requirement of FACA § 10(b). *Id.* ¶¶ 5-7; Second Butler Decl. ¶ 5, 6. These documents consist of four broad categories of documents:

> (1)  the preliminary and final versions of the Reading First Applications that SEAs submitted to [DOED];
>
> (2)  the Reading First Criteria for Review of State Applications that [DOED] provided to peer reviewers;
>
> (3)  the Technical Review Form Summary Sheets of individual panelists reviewing Reading First applications; and
>
> (4)  the Panel Chair Summary Forms relative to all versions of the Reading First applications submitted by SEAs.

Second Butler Decl. ¶ 4. Between June 29, 2007 and July 17, 2007, defendants provided plaintiff 27 compact disks containing these documents, which total approximately 62,000 pages. *Id.* ¶ 6.

Defendants' statement that these documents comprise the entirety of documents in the DOED's possession that were "made available to or prepared for or by" the Old Panel, Third

Butler Decl. ¶ 5; Second Butler Decl. ¶ 5, is entirely consistent with the IG Report's description of the Old Panel's process for reviewing State applications:

> The Department created the *Reviewer Guidance for the Reading First Program*, [Category 2 above] which describes the process by which panelists will review applications [Category 1 above] and provide their comments. The Reviewer Guidance, which the Department provided to panelists, states that it is the reviewer's responsibility to provide a rating for each review criterion and constructive strength and weakness comments on the Technical Review Form [Category 3 above]. The guidance states that the panel chair will complete an additional summary sheet, called the Panel Chair Summary [Category 4 above], which will reflect a consensus rating and supporting comments for each criterion. The guidance also states that the Panel Chair Summary will provide an overall consensus recommendation for approval or disapproval of the application.

IG Report at 8. Thus, the documents produced to plaintiff are the only documents described by the IG Report that would be subject to FACA § 10(b)'s disclosure requirement. In contrast, Plaintiff's speculation that additional categories of documents exist that would be subject to FACA § 10(b)'s disclosure requirement, Pl. Mem. Opp. at 14, does not cite to the IG Report or any other corroborating evidence. As the Court of Appeals has recently held, "[m]ere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them." *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 316 (D.C. Cir. 2003) (quoting *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir.1991)).

Furthermore, plaintiff's contention that DOED has an obligation to contact former panelists as part of its search for records that were "made available to or prepared for or by each advisory committee" is contrary to the well-established rule, adopted from FOIA cases, that "requires an agency to do no more than disclose nonexempt documents within its possession that are retrievable by a reasonable search." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1363

(D.C. Cir. 1983). Thus, in *National Sec. Archive v. Archivist of the United States*, 909 F.2d 541 (D.C. Cir. 1990) (per curiam), the United States Court of Appeals for the District of Columbia Circuit rejected the argument that "FACA require[d] the Office of Administration 'to make reasonable efforts' to satisfy documents requests by forwarding them to the appropriate entity[,]" which in that case was the Tower Commission, an acknowledged advisory committee. *Id.* at 546; *see also Byrd*, 174 F.3d at 248 n.8 (rejecting request for further discovery based on the "plainly conclusory assertion" that there may be "undisclosed documents identifying additional contacts between EPA and the peer panel members.").

In *Physicians Comm. for Responsible Medicine v. Glickman*, 117 F. Supp. 2d 1 (D.D.C. 2000), the district court encountered an identical argument, likewise based on plaintiffs' suspicion "that Committee working groups generated documents that were never produced." *Id.* at 4. As in this case, plaintiffs were unable to "point to any 'countervailing evidence or apparent inconsistency of proof' that discredits the agency's position that it has no such records." *Id.* (citing *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982)). The district court conceded the possibility that former panelists may have additional records "in the form of email communications between working group members or notes from private meetings," but noted that "[t]here is no evidence, however, that the *agency* ever had records describing these events." *Id.* Citing the well-established rule that "[a]n agency 'is under no duty to disclose documents not in its possession," the district court denied plaintiffs' request because "[d]iscovery to pursue a suspicion or hunch is unwarranted." *Id.*

Plaintiff's reliance on *Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 879 F. Supp. 103 (D.D.C. 1994), for the proposition that defendants have an obligation to contact former

panelists to search for FACA § 10(b) records, is misplaced. In that case, the district court ultimately held that the case was moot notwithstanding defendants' alleged failure to "gather[] documents from all of the 'participants' in the interdepartmental working group process," because the plaintiffs had "not provided any evidence whatsoever that any person on their list of over 1,000 alleged participants now possesses any document not now available at the National Archives that was 'made available to or prepared by or for' the interdepartmental working group or any of its subgroups." *Id.* at 105; *see also Ass'n of Am. Physicians and Surgeons, Inc. v. Clinton*, 879 F. Supp. 106, 107 (D.D.C. 1994) (dismissing same case as moot). It is true that defendants in *Clinton* had collected FACA § 10(b) records from 630 other participants, but that does not distinguish *Clinton* from the instant case. The Department has collected (and produced) every Technical Review Form and Panel Chair Summary "prepared by" the Old Panel, and there is no basis to suspect that any of the former panelists "possesses a single working group document that is not publicly available." *Id.* at 105-06.[5]

Plaintiff's final argument is that defendants' refusal to produce records that are not subject to FACA § 10(b), specifically the so-called conflict of interest forms, somehow demonstrates that the Department's search for FACA § 10(b) records is inadequate. This argument is meritless. As the IG Report makes clear, these forms were used by the Department

---

[5] In addition, plaintiff's statement that the "court found that even though documents had been produced, the failure to produce any electronic records meant the case was not moot," Pl. Mem. Opp. at 13, is a misleading characterization of the district court's holding. In fact, the district court held that until the defendants "made public certain electronic versions of documents *that they intend to provide to the Archives* . . . . [the] case [would] remain 'almost' moot, but not moot." *Clinton*, 879 F. Supp. at 105 (emphasis added). Defendants in this case do not have any electronic versions of documents that have not already been produced to plaintiff. *See* Third Butler Decl. ¶¶ 5-7.

to screen potential panelists before the formation of the Old Panel. IG Report at 7. These forms were not "made available to or prepared for or by" the Old Panel, and are therefore not subject to the disclosure requirement of FACA § 10(b). *See, e.g., Ass'n of Am. Physicians & Surgeons, Inc. v. Clinton*, 879 F. Supp. 103, 105 (D.D.C. 1994) (records relating to costs of alleged advisory committee not subject to FACA's disclosure requirement).

In summary, plaintiff is unable to identify any actual issues that remain to be litigated. Defendants have identified and produced all records subject to FACA § 10(b), and are operating the New Panel pursuant to the FACA. These actions address any possible legal controversy between the parties, and this case must therefore be dismissed as moot.

## **CONCLUSION**

For the foregoing reasons, defendants respectfully request that this Court grant defendants' motion to dismiss.

                                              Respectfully submitted,

                                              PETER D. KEISLER
                                              Assistant Attorney General

                                              JEFFREY A. TAYLOR
                                              United States Attorney

                                               s/*John R. Coleman*
                                              ARTHUR R. GOLDBERG, D.C. Bar 180661
                                              Assistant Branch Director
                                              JOHN R. COLEMAN
                                              Trial Attorney, Department of Justice
                                              20 Mass. Ave., N.W., Room 6118
                                              Washington, D.C.  20530
                                              Tel: (202) 514-4505/Fax: (202) 616-8460
                                              E-mail: john.coleman3@usdoj.gov

Dated: October 26, 2007                      Attorneys for Defendants

*CREW v. Spellings*, Civil Action No. 06-cv-02086-HHK

**EXHIBIT A**

**to Defendants' Reply In Support of
Its Motion to Dismiss**

**Third Declaration of James Butler**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, ) ) ) | No. 1:06-cv-02086-HHK |
| Plaintiff, ) ) ) | |
| v. ) ) | THIRD DECLARATION OF JAMES BUTLER |
| MARGARET SPELLINGS, Secretary of Education, *et al.*, ) ) ) ) | |
| Defendants. ) ) | |

JAMES BUTLER says:

1. I am the Group Leader of Teacher Quality Programs in the Academic Improvement and Teacher Quality Programs (AITQP) Division of the U.S. Department of Education's Office of Elementary and Secondary Education.

2. AITQP is the division of the Office of Elementary and Secondary Education that administers the Reading First program.

3. Prior to September 2006, individuals who are no longer employed by the Department administered the Reading First program. Before they left the Department, former Reading First staff members showed me where the files for the program were located.

4. From September 2006 through the summer of 2007, in responding to audits conducted by the Department's Office of the Inspector General and to various requests for the production of documents, my staff and I have had several occasions to search and become familiar with the materials in the Reading First program files. Our searches have included a thorough review of every file drawer in every file cabinet known to contain the Reading First program files.

5. On the basis of these searches, it is my belief that the only documents that were made available to or prepared for or by the panels that reviewed the Reading First applications that State educational agencies (SEAs) submitted to the Department are the documents identified in my September 21, 2007 declaration.

6. As stated in my declaration of September 21, 2007 declaration, to the best of my knowledge, information, and belief, the Department has provided Citizens for Responsibility and Ethics in Washington (CREW) in electronic format copies of all of the above-referenced documents in the Department's possession, except for limited portions that contained personally identifiable information.

7. To the best of my knowledge, information, and belief, the Department possesses no additional documents that were made available to or prepared for or by the panels that reviewed the Reading First applications.

8. I declare under penalty of perjury that the foregoing is true and correct. Executed October 18, 2007.

_____
JAMES BUTLER