## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ARNE DUNCAN, Secretary of Education, et al.,**<br><br>**Defendants.** | **Civil Action  06-02086 (HHK)** |

## MEMORANDUM OPINION

Citizens for Responsibility and Ethics in Washington ("CREW") brings this action against Arne Duncan, the Secretary of Education, in his official capacity, and the United States Department of Education (collectively, the "Department") under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*  CREW alleges that the Department failed to disclose documents as required by the Federal Advisory Committee Act, 5 U.S.C. App. 2 § 1 *et seq.* ("FACA").  CREW also alleges that the Department failed to comply with the open meetings and disclosure provisions of FACA and failed to publish a FACA charter.  CREW seeks the full production of their requested documents, and declaratory and injunctive relief holding that the Department violated FACA and enjoining it from future violations.

Before the Court is the Department's motion to dismiss for lack of subject matter jurisdiction on grounds of mootness [#15].  Upon consideration of the motion, the opposition thereto, and the record of this case, the Court concludes that the motion should be granted.

## I. BACKGROUND

In 2002, Congress enacted the Reading First Initiative, which requires the Secretary of Education to create a panel to evaluate state Reading First grant proposals and make approval recommendations to the Secretary.  20 U.S.C. § 6363(c)(2)(C).  Accordingly, the former Secretary of Education, Margaret Spellings, created a panel consisting of three people selected by Secretary Spellings herself, three selected by the National Institute for Literacy, three selected by the National Research Council of the National Academy of Sciences, and three selected by the National Institute of Child Health and Human Development as required by the Reading First statute.  Spellings then created sub-panels to review the State applications and recommend either approval or disapproval to the Secretary.  The Department chose the majority of panelists on these sub-panels, allegedly in violation of statutory requirements.  The Department refers to these sub-panels as the "Old Panel."  It is the "Old Panel" that CREW alleges violated FACA disclosure, open meeting and charter requirements.

In September 2006, the Department's Office of Inspector General issued a Final Inspection Report, which found that the Old Panel did not comply with the Elementary and Secondary Education Act of 1965.  In response to this finding, CREW sent a letter to the Department requesting all documents related to the Old Panel's review of grant proposals, the Old Panel's charter, and detailed meeting minutes.  CREW intended to analyze this information and share it with the public through various forms of media, including the CREW website.  The Department did not initially respond to this request.  Believing the non-disclosure to be a violation of FACA § 10(b) requirements, CREW instituted this suit in December 2006.

After this suit was filed, the Department searched "every file drawer in every file cabinet

known to contain Reading First program files." (Fourth Butler Decl. ¶ 4.)  This search yielded

62,000 pages of documents containing:

    a.      the preliminary and final versions of the Reading First applications that [State Educational Agencies] submitted to the Department;

    b.      the Reading First criteria for Review of State applications that the Department provided to peer reviewers;

    c.      the Technical Review Form Summary Sheets of individual panelists reviewing Reading First applications; and

    d.      the Panel Chair Summary Forms relative to all versions of the Reading First applications submitted by [State Educational Agencies].

(Second Butler Decl. ¶ 4.)  By July 17, 2007, the Department copied these documents onto

compact discs and sent the discs to CREW.  According to the Department, this disclosure

represented "all of the documents in the Department's possession that were made available to or

prepared for or by the panels that reviewed the Reading First Applications."  (*Id*. ¶ 5.)

After this suit was filed, Spellings also committed to "mov[e] swiftly to enact all of the

Inspector General's recommendations," (Compl. Ex. E.), and on March 1, 2007, she announced

the forthcoming establishment of a new panel ("New Panel"), which would replace the Old Panel.

Spellings issued a charter for the New Panel and stated that the New Panel would take over the

duties of the Old Panel.  Pursuant to FACA, the Department then published in the Federal

Register "the date and location of the first meeting of the New Panel, as well as a tentative

agenda." (Def's. Mot. Dismiss at 8.)  CREW does not dispute the Department's assertion that the

New Panel's activities have thus far complied with FACA.

In August 2008, the Department's Office of Elementary and Secondary Education moved

to a new office space.  During this move, a banker's box thought to contain only personnel-

related documents was delivered to the new office of Dr. Joseph Conaty.[1]  After reviewing the

box's contents, Dr. Conaty found 285 pages worth of Reading First documents.  These

documents were sent to CREW on September 15, 2008.  In his fourth declaration, James Butler[2]

declared that "[t]o the best of [his] knowledge, information, and belief, the Department possesses

no additional documents that were made available to or prepared for or by the panels that

reviewed the Reading First applications."   (Fourth Butler Decl. ¶ 12.)

## II.  ANALYSIS

The Department moves to dismiss this case for lack of subject matter jurisdiction because

the Department produced the requested documents and established a new advisory panel in

compliance with FACA.  As a result, the Department contends that CREW's claims are all moot.

CREW responds that the Department has not produced all of the requested material and that

CREW's claims for declaratory and injunctive relief still present a live issue.  CREW seeks the

full production of the requested documents, declaratory relief, and an injunction enjoining the

Department from utilizing the advice of Reading First panels until the Department complies with

FACA.

Article III requires that its "case or controversy requirement subsist[] through all stages of

federal judicial proceedings, trial and appellate."  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998)

(internal quotation omitted).  To satisfy the requirement of a case or controversy, "the plaintiff

---

[1] Dr. Conaty is the Director of the Academic Improvement and Teacher Quality Programs Division of the Department of Education's Office of Elementary and Secondary Education. (Fourth Butler Decl. ¶ 7.)

[2] James Butler is the Group Leader of Teacher Quality Programs in the Academic Improvement and Teacher Quality Programs Division of the U.S. Department of Education's Office of Elementary and Secondary Education.  (Fourth Butler Decl. ¶ 1.)

must have suffered or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Id*. (internal quotation omitted). When the injury dissipates, a case has "lost its character as a present, live controversy of the kind that must exist if [the court is] to avoid advisory opinions on abstract questions of law." *Princeton Univ. v. Schmid*, 455 U.S. 100, 103 (1982) (internal quotation omitted). At this point, the case becomes moot. *Id.*; *see also U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (describing mootness as "the doctrine of standing set in a time frame:  The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (internal quotation omitted).

The Court will first consider whether CREW's claim for production of documents is moot and then turn to the question of whether its claims for declaratory and injunctive relief are moot.

**A.      The Department's Demonstration of Full Document Production Moots CREW's Claim to Compel Production.**

The first of CREW's claims seeks full production of the documents it requested pursuant to FACA § 10(b).  CREW argues that the Department has not demonstrated that it has conducted an adequate search for the requested records.  CREW contends that the Department' declarations are conclusory because the Department has not shown the scope and method of its search or demonstrated that it contacted the members of the working group regarding the requested documents.  Additionally, CREW points to the Department's failure to account for certain requested documents, including Old Panel members' conflict of interest forms, as evidence that the Department's search was inadequate.

The Department responds that it has produced all responsive documents and that its

declarations demonstrate the adequacy of its search.  Furthermore, the Department asserts that it is under no obligation to contact former working group members without evidence that such members possess any of the requested documents, and avers that the conflict of interest forms requested by CREW do not exist.

When determining whether an agency has performed an adequate search for documents, a court may rely on agency affidavits because "these affidavits are equally as trustworthy when they aver that all documents have been produced or are unidentifiable as when they aver that identified documents are exempt."  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978).  Agency affidavits "enjoy a presumption of good faith, which will withstand purely speculative claims about the existence and discoverability of other documents."  *Ground Saucer Watch, Inc., v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981).  These affidavits, however, must be "'relatively detailed' and non-conclusory and . . . submitted in good faith."  *Id.* (citing *Goland*, 607 F.2d at 352).  The affidavits should explain "the scope and method of the search."  *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982); *see also Weisberg v. U. S. Dep't of Justice*, 745 F.2d 1476, 1487 (D.C. Cir. 1984) (affidavits must demonstrate a "good-faith effort to locate responsive materials.").

Once a defendant has presented an adequately detailed affidavit, the burden then shifts to the plaintiff to present evidence suggesting that the search was not adequate.  *Ground Saucer Watch, Inc.*, 692 F.2d at 771.  If the plaintiff does not present such evidence, the agency maintains a "presumption of good faith."  *Id*; *see Physicians Comm. for Responsible Medicine v. Glickman*, 117 F. Supp. 2d 1, 4 (D.D.C. 2000) ("Discovery to pursue a suspicion or a hunch is unwarranted.").

The Fourth Declaration of James Butler, submitted with the Department's "Notice of

Newly Discovered Documents" [#19] is sufficiently detailed and non-conclusory to warrant this

Court's presumption of good faith regarding the Department's search. By stating in the Fourth

Butler Declaration that the two review sessions were carried out by James Butler and his staff,

and Dr. Joseph Conaty, respectively, and that each session covered "every file drawer of every

file cabinet known to contain Reading First program files," (Fourth Butler Decl. ¶¶ 4, 6.), the

Department identified the scope and method of its search. The Department has thus met its

burden of providing an adequately detailed and non-conclusory affidavit. *See Perry*, 684 F.2d at

127 ("Neither *Weisberg* nor *Founding Church of Scientology* demands . . . that the affidavits of

the responding agency set forth with meticulous documentation the details of an epic search for

the requested records.").[3]

        Furthermore, CREW fails to provide any evidence to support its belief that documents

outside of those already provided are unaccounted for or exist. In order to successfully challenge

the adequacy of an agency document search, a party "must point to evidence sufficient to put the

Agency's good faith into doubt." *Ground Saucer Watch, Inc.*, 692 F.2d at 771. *Perry*

---

        [3] The D.C. Circuit has acknowledged that "the discovery of additional documents is more
probative that the search was not thorough than if no other documents were found to exist."
*Goland*, 607 F.2d at 370. The Circuit has also recognized, however, that it must consider "all of
the surrounding circumstances" when ruling on the adequacy of a documents search, *Perry*, 684
F.2d at 128, and that "a disappointed litigant may not avail herself of every imaginable inference
from newly discovered facts in order to upset a final judgment," *Goland*, 607 F.2d at 370. Thus,
the fact that the agency found more documents alone is not illustrative of a bad faith search. As
was the case in *Perry*, where only ten additional pages were found subsequent to the initial 600
page disclosure, *Perry*, 684 F.2d at 128, the 285 additional pages of documents found in this case
represent a small percentage of the more than 62,000 pages of the disclosed documents.
Furthermore, the delay was caused because the files were placed in a banker's box that otherwise
contained personnel files. This suggests "neither artifice nor subterfuge but rather, at worse,
administrative inefficiency" and does not put the Department's presumptive good faith in
jeopardy. *See id.*

summarized the type of evidence needed to instill such doubt:

> In *Weisberg*, the agency's own assertions supported an inference that specifically identified material, solicited by the requester, might have remained in the agency's possession.  The appellant in *Weisberg* also adduced specific evidence tending to show that the search conducted for the records had been inadequate.  *Id.*

*Perry*, 684 F.2d at 127 (internal citation omitted).  Here, CREW does not point to sufficient evidence indicating that the Department conducted an inadequate search, or that the Department possesses unproduced Reading First documents.  As evidence that "conflict of interest forms" exist and were not produced, CREW points to a letter in which the Department's attorney referenced "conflict of interest forms."  Pl.'s Opp'n to Defs.' Mot. Dismiss at 14.  The Department's attorney only referenced these forms, however, in response to CREW's own request for them.

Lastly, the Department is not obliged to produce the remaining documents, requested by CREW and listed in Exhibit A of plaintiff's opposition, because CREW has not provided evidence that the Department actually possesses them.  *See Glickman*, 117 F. Supp. 2d at 4 ("An agency is 'under no duty to disclose documents not in its possession.'") (citing *Rothschild v. Dep't of Energy*, 6 F. Supp. 2d 38, 40 (D.D.C. 1998)).  CREW's argument amounts to no more than "mere speculation that as yet uncovered documents may exist."  *See Iturralude v. Comptroller of the Currency*, 315 F.3d 311, 316 (D.C. Cir. 2003) (citing *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991)).

Because the evidence indicates that the Department has now produced all available documents, and CREW does not defeat the Department's presumptive good faith, *see Ground Saucer Watch, Inc.*, 692 F.2d at 771, the Court is satisfied that CREW's requested documents

"[have] been produced, [are] unidentifiable, or [are] wholly exempt." *See Nat'l Cable Television Ass'n,* 479 F.2d 183, 186 (D.C. Cir. 1973).  Therefore, an order compelling document production can no longer redress CREW's informational injury, and the claim to compel production is moot.

**B.      Declaratory and Injunctive Relief Can No Longer Redress CREW's Injuries.**

CREW's claim for declaratory and injunctive relief is two-fold.  CREW seeks declaratory and injunctive relief with respect to the Department's allegedly inadequate document production.  CREW also seeks declaratory and injunctive relief with respect to the Old Panel's other FACA violations, including the violation of FACA's open meetings and charter requirements.  CREW argues that these past FACA violations still present a live issue for adjudication, noting specifically that the termination of a committee does not moot a claim for declaratory and injunctive relief.  The Department rejoins that the establishment of the New Panel and its production of the requested documents operate to moot both elements of CREW's claim for declaratory and injunctive relief.

CREW is correct that termination of the Old Panel does not necessarily moot its claims. *See United States v. W.T. Grant*, 345 U.S. 629, 632 (1953) ("voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e. does not make the case moot.").  To survive a mootness inquiry, however, CREW must demonstrate that:

> the facts alleged, under all circumstances, show that there is a substantial
> controversy, between parties having adverse legal interests, of sufficient
> immediacy and reality to warrant the issuance of a declaratory judgment.

*Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941).  A claim arising under FACA for declaratory judgment will become moot when "the working group has been terminated and all

appropriate working group documents have been publicly released," *Ass'n of Am. Physicians &*
*Surgeons v. Clinton*, 879 F. Supp. 103, 106 (D.D.C. 1994), so long as defendants "demonstrate
that 'there is no reasonable expectation that the wrong will be repeated.'" *W.T. Grant Co.*, 345
U.S. at 633 (internal quotation omitted).  Once a defendant has satisfied these two requirements,
"there will simply be no continuing case or controversy for judicial resolution," because there
will be no Committee proceedings left to challenge and no documents in need of production. *See*
*Am. Physicians & Surgeons*, 879 F. Supp. at 106.  Likewise, there will be no basis for injunctive
or other equitable relief. *Id*.

CREW argues that its request for declaratory and injunctive relief with respect to the
Department's allegedly deficient document production is not moot, citing *Byrd v. EPA* for
support. *Byrd* is distinguishable, however,  because in *Byrd*, the need for declaratory relief
turned on the timeliness of the production. *See Byrd v. U.S. EPA*, 174 F.3d 239, 244 (D.C. Cir.
1999).  The District of Columbia Circuit draws a clear distinction between an injury resulting
only from a failure to produce and one resulting from a failure to produce in a *timely* fashion:

> If Byrd had simply complained that EPA failed to release the documents he
> requested, his alleged injury could not be redressed by any action of this court
> because he ultimately received the materials.  Byrd's injury, however, resulted
> from EPA's failure to furnish him with the documents until long after they would
> have been of any use to him.

*Id*.  Unlike *Byrd*, here CREW does not allege any injury due to the Department' tardy disclosure
of the requested documents.  CREW does not indicate that it had any intention to use the
requested documents for anything more than information dissemination, a task that the
organization is now capable of carrying out.

In arguing that its claims for declaratory and injunctive relief are not moot, CREW makes

10

several references to the ongoing nature of these violations.  "So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure . . . and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit."  *Payne Enters. v. United States*, 837 F.2d 486, 491 (D.C. Cir. 1988) (footnote omitted).  CREW has not, however, alleged the existence of an agency policy or practice of withholding information, only a "persistent refusal to admit [the Department's] past violations."  (Pl. Opp'n to Defs.' Mot. to Dismiss at 11.) Therefore, CREW has not established a reasonable expectation that the Department will repeat its disclosure violations.  *See W.T. Grant*, 345 U.S. at 633.

Regarding the Department's other alleged FACA violations, including the violation of FACA's open meetings and charter requirements, the Department's establishment of the New Panel renders these claims moot.  *See Am. Physicians & Surgeons*, 879 F. Supp. at 106.  The New Panel performs the same tasks as the Old Panel, illustrating the termination and replacement of the Old Panel.  Moreover, it is undisputed that the New Panel is chartered under FACA, and to date, this panel has satisfied all of its requirements under FACA.  These actions by the Department eliminate the need for this Court to grant declaratory and injunctive relief.  *See Byrd*, 174 F.3d at 244, ("[Byrd's] injury would be mooted if EPA convened another panel . . . in compliance with FACA."); *see also Am. Physicians & Surgeons*, 879 F. Supp. at 106 (holding that a FACA claim becomes moot when "the working group has been terminated and all appropriate working group documents have been publicly released.").  Without further evidence to the contrary, this Court has "no reasonable expectation that [the Department's FACA violations] will be repeated."  *See W.T. Grant*, 345 U.S. at 633 (internal quotation omitted).

11

Accordingly, declaratory and injunctive relief can no longer redress CREW's injuries and its claims are moot.

### III.  CONCLUSION

For the foregoing reasons, the Court concludes that Department's motion to dismiss for lack of subject matter jurisdiction on grounds of mootness [#15] should be granted.  An appropriate order accompanies this memorandum opinion.

Henry H. Kennedy, Jr.
United Sates District Judge